ANN L. PADDOCK *v.* GAYLORD A. PADDOCK
(8436)

DUPONT, C. J., BORDEN and DALY, Js.

Argued March 14—decision released July 17, 1990

*Dominick J. Thomas, Jr.,* for the appellant (defendant).

*Heidi G. Winslow,* for the appellee (plaintiff).

DUPONT, C. J. The defendant appeals from the order of the trial court modifying the amount of periodic alimony that had been awarded to the plaintiff upon the dissolution of the marriage of the parties. The issues are whether the court abused its discretion in reducing that award, and whether the trial court was authorized to make that modification retroactive.

The parties' thirty year marriage was dissolved in 1982. At that time, the trial court ordered the defendant to pay the plaintiff $250 per week in periodic alimony pursuant to the parties' separation agreement. In August, 1987, the plaintiff filed a motion for contempt, alleging that the defendant had failed to pay the full amount of the alimony as ordered and seeking recovery of the amount in arrears. In October, 1987, while the contempt motion was pending, the defendant sought a modification of the periodic alimony award based on an alleged substantial decrease in his income and his assets. The trial court, *Moraghan, J.,* denied the defendant's motion and ordered the defendant to

sell certain property and to use the proceeds to pay the arrearage. The defendant complied with that order.

In May, 1988, the defendant filed another motion for modification of the periodic alimony award, again alleging a substantial decrease in his income and his assets. On November 21, 1988, the court, *Stodolink, J.,* granted the defendant's motion and modified the periodic alimony to $30 per week. Neither the plaintiff nor her attorney was present when the judgment was rendered, but both arrived approximately thirty minutes later, having been delayed en route to court. The following day, the plaintiff filed a motion to open and vacate the modification order,[1] explaining the reasons for the late arrival.

On May 8, 1989, after a hearing, the same trial court vacated the prior modification "based on the lack of opportunity of the plaintiff or her recently appointed conservator to be heard."[2] In its memorandum of decision, the court ruled that a modification was not barred by the terms of the original dissolution. It found that the plaintiff's economic needs were substantially unchanged since the time of the dissolution and that the defendant's economic circumstances had changed substantially.

At the time of the hearing, both of the parties were fifty-eight years old. The plaintiff had never been employed outside of the home after the marriage. Hers

[1] In her motion, the plaintiff argued that under the terms of the separation agreement incorporated into the judgment of dissolution, the periodic alimony was nonmodifiable unless the plaintiff's gross annual income from employment exceeded $12,000. The plaintiff has abandoned this argument on appeal.

[2] The plaintiff was not present at the hearing as she was hospitalized in the psychiatric unit of Danbury Hospital at the time. The only evidence presented by the plaintiff's counsel at the hearing was the testimony of the plaintiff's conservator, who is also the parties' son.

is a history of mental illness and alcohol abuse and her conservator testified that she had been hospitalized for treatment of these problems almost yearly since the dissolution. According to her financial statement of April, 1988, her assets totaled $82,516, including equity of $58,000 in her home. Her weekly income was $272, of which $250 was alimony. Her weekly expenses were $284.

At the time of the dissolution, the defendant was earning approximately $40,000 a year. In 1984, this employment was terminated, and, at the time of the hearing, the defendant was working as a sales representative on commission and earning about $15,500 annually, as found by the court.[3] He has remarried and has a four year old son. According to his financial statements, his weekly income in March, 1989, was $246; his weekly expenses, including the $30 alimony payment, totaled $428. His assets were valued at $3452 with liabilities of $4483.

The trial court found that the reduction in the defendant's income was substantial and was not by design. In its memorandum of decision the court also stated: "[T]he defendant, however, is not precluded from securing additional part-time work." On the basis of its findings and in an effort "to balance the needs of the plaintiff and the ability to pay by the defendant," the court vacated the prior modification and reduced the weekly periodic alimony payment from $250 to $175, retroactive to November 21, 1988, the date the court had ordered the weekly payment of $30. The court further ordered that the defendant pay an additional $25 per week towards the difference between $30 and $175 for the period the $30 payment was in effect.

---

[3] The defendant testified that he netted only $7500 annually, after business expenses.

On appeal, the defendant claims that the modification to $175 is arbitrary and unsupported by the evidence. He does not, of course, challenge the trial court's finding of a substantial change in his circumstances, but argues that the reduction in alimony does not adequately reflect the extent of the reduction in his income. The defendant also claims that there was no evidence concerning his availability for and his ability to obtain part-time employment.

In appropriate circumstances in marital dissolution proceedings, a trial court may base its financial awards on the earning capacity rather than the actual earned income of the parties. *Johnson* v. *Johnson,* 185 Conn. 573, 576, 441 A.2d 578 (1981); *Hart* v. *Hart,* 19 Conn. App. 91, 94, 561 A.2d 151 (1989). Such circumstances include those where there is evidence that a party voluntarily quit or avoided employment in his or her field of expertise and where there is evidence of that party's previous earnings. *Miller* v. *Miller,* 181 Conn. 610, 612–13, 436 A.2d 279 (1980); *McKay* v. *McKay,* 174 Conn. 1, 2, 381 A.2d 527 (1977); *Hart* v. *Hart,* supra, 94, 95. A periodic alimony order, however, "disobedience of which invokes the penalty of contempt, should not exceed the current financial ability to meet it of the party on whom it is imposed . . . ." *Rubin* v. *Rubin,* 204 Conn. 224, 237, 527 A.2d 1184 (1987).

It is apparent that the trial court in the present case found the defendant's current income insufficient to support the ordered weekly alimony payment of $175 and that it intended that the defendant supplement that income with earnings from part-time employment. The court found that the defendant had not voluntarily left his previous employment, and that his reduced income was not intentional. The evidence showed that at the time of the hearing, he was working in a field closely related to his prior employment. There was no evidence

that the defendant had the ability or the time to obtain a part-time job to supplement his income. The only evidence of a potential increase in the defendant's income was his own testimony that he hoped that his sales and consequent commissions would increase in the future. He also testified that he did not believe that it was realistic to start a new occupation at his age.

Our standard of review in a domestic relations case is well settled. We will not substitute our judgment for that of the trial court and will not disturb an order of the trial court absent an abuse of discretion or findings lacking a reasonable basis in the facts. *Cattaneo* v. *Cattaneo,* 19 Conn. App. 161, 166, 561 A.2d 967 (1989). Here, however, we conclude that the trial court's order of $175 per week cannot stand because it is based upon the court's implicit finding that the defendant should or could supplement his income with part-time employment, a proposition for which no evidence was introduced.

The defendant also argues that the facts before the trial court did not present a sufficient basis for opening and vacating its November 21, 1988 order. We disagree. The authority to open and vacate a judgment is within the inherent power of the trial courts. *Steve Viglione Sheet Metal Co.* v. *Sakonchick,* 190 Conn. 707, 710, 462 A.2d 1037 (1983). A motion to open and vacate should be granted when the court, acting reasonably, finds good cause to do so. Id., 711. The decision to grant or deny the motion lies within the court's discretion and we will not disturb such a decision, absent an abuse of discretion. *Costello* v. *Hartford Institute of Accounting, Inc.,* 193 Conn. 160, 167, 475 A.2d 310 (1984). In the present case, the trial court opened and vacated the November order to give the plaintiff an opportunity to be heard. This concern, implicating the due pro-

cess rights of a party, offers sufficient support for the trial court's decision to reconsider its earlier order.[4]

The defendant also argues that the trial court should not have made the new award retroactive. The trial court vacated its prior award of $30 per week and ordered the defendant to pay $175 per week from the date of that prior award. It further ordered the defendant to pay an additional $25 per week "on any arrearage that has accumulated since November 21, 1988, as a result of the $30 per week order vacated above."

The trial court's orders amounted to a retroactive modification of its prior alimony award. General Statutes § 46b-86[5] has been construed as not authorizing such a retroactive modification. *Darak* v. *Darak,* 210 Conn. 462, 479, 556 A.2d 145 (1989); *Sanchione* v. *Sanchione,* 173 Conn. 397, 406–407, 378 A.2d 522 (1977).

The plaintiff argues, however, that this case is distinguishable from both *Darak* and *Sanchione* in that those cases involved retroactive reductions of the amount of alimony payable, resulting in adverse consequences for the alimony recipient. She asserts that the retroactive modification in the present case actually prevented the recipient from suffering adverse consequences. It is true that both decisions rested on an underlying desire to "prevent hardship to alimony recipients by protecting their expectations and enabling

---

[4] The defendant further challenges the second order because the trial court had the parties' financial information before it in November, and that information was essentially unchanged in May. The trial court was free, however, to consider evidence presented at the May hearing not contained in the parties' financial statements.

[5] General Statutes § 46b-86 provides in pertinent part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party."

them to rely upon the continuing alimony obligation of the paying spouse." *Sanchione* v. *Sanchione,* supra, 405–406; see *Darak* v. *Darak,* supra.

There are other equally compelling reasons, however, supporting the rule against retroactive modification of alimony. One reason is that an order for alimony is in the nature of a final judgment and cannot be retroactively disturbed. *Sanchione* v. *Sanchione,* supra, 405. Also, an alimony decree that can be modified retroactively is not entitled to full faith and credit in a foreign state unless it has been reduced to a money judgment for an arrearage. Id., 406. "Yet another consideration is that trial courts asked to modify retroactively the original alimony order might well become engaged in what would essentially be appellate review of another trial court's judgment, or in 'second-guessing' another trial court." Id. Furthermore, a paying spouse should be able to rely upon the amount of an alimony award he or she is required to pay, and should not be subject to an accumulating arrearage of an unknown amount.

Even though this case is factually distinguishable from *Sanchione* and *Darak,* in that it involves a retroactive *increase* in alimony payments, we decline to depart from the well reasoned rule of those cases prohibiting retroactive modification of alimony. We conclude, therefore, that the trial court should not have ordered the defendant to pay $175 per week as of November 21, 1988.

Because the court vacated its judgment of November 21, 1988, however, the question remains as to the amount for which the defendant should be held accountable for the period between that date and May 8, 1989. Two alternatives exist. Either the $30 award remained in effect until the $175 judgment was rendered, or the $30 award was made invalid by the subsequent grant

of the plaintiff's motion to vacate, leaving the original $250 judgment in effect until May 8, 1989. Any other figure, including $175, would amount to an impermissible retroactive modification of alimony. See *Darak* v. *Darak,* supra.

Usually, when a judgment is vacated and a new judgment is ordered, the new judgment completely replaces the original judgment and becomes the only valid judgment in the case. See *Coxe* v. *Coxe,* 2 Conn. App. 543, 547, 481 A.2d 86 (1984). The *Darak* court, however, provided an exception to that rule. There, after the trial court reversed its prior modification, finding that it had been rendered illegally, it attempted to eliminate the consequences of that order by allowing the plaintiff to apply a credit of $5 per week against his alimony obligations until he was fully reimbursed for the amount he had overpaid pursuant to the modification. On appeal, the Supreme Court agreed that the earlier order could not be enforced in the future. *Darak* v. *Darak,* supra, 478–79. It allowed the modification to remain intact for the period between the date it was ordered and the date it was reversed, however, because it found that the plaintiff, rather than the defendant, was better able to bear the hardship ensuing from the mistaken ruling. Id., 479. The Supreme Court, therefore, did not remand the case to the trial court for any further proceedings.

In the present case, on the basis of *Darak,* we also conclude that no remand concerning the retroactive payment is necessary. The relevant facts, including the financial condition of the parties for the time in question, are contained in the trial court record and the equities arising therefrom can as easily be weighed by this court as by the trial court. We recognize that any resolution based upon the evaluation of the equities will necessarily cause some hardship to one or both of the parties.

The defendant moved to modify the periodic alimony when his income decreased substantially, the plaintiff moved to vacate the $30 judgment the day after it was rendered, and neither party caused the six month delay before the motion to vacate was heard. The trial court found that the defendant had an annual income of $15,500 as of May 8, 1989. A weekly alimony payment of $250 would amount to $13,000 per year and would leave the defendant with $2500 per year to support himself and his new family. The court also found that the plaintiff's financial needs had not changed since the original $250 decree of alimony and the record shows that she has no other significant source of income.

On the basis of these particular facts, we conclude that the $30 judgment, although subsequently vacated, remained in effect for the period between November 21, 1988, and May 8, 1989. Holding the defendant accountable for $250 per week for that period would cause undue hardship and subvert the economic expectations of the parties. This resolution does not end our inquiry, however, for we must determine the effect of the court's remedial order of an additional $25 per week.

In *Darak,* the defendant wife obtained a stay of execution of the judgment ordering the $5 credit. When the Supreme Court deleted that part of the judgment, no further action was necessary. In this case, the record does not indicate that the defendant either sought or obtained a stay of execution of the May 8, 1989 judgment. See Practice Book § 4047. The defendant, therefore, may have complied with this order and paid an additional $25 per week from the date of the order to the present. Although we have already determined that this order should never have been made, we decline to disturb it to the extent that payments pursuant to it have already become due. The plaintiff, having already

borne the burden of the erroneous $30 judgment, should not be required to reimburse the defendant for these payments.

The judgment modifying the alimony payment to $175 per week and ordering an additional payment of $25 per week is reversed, and the case is remanded for a rehearing on the question of the modification of alimony consistent with this opinion.

In this opinion the other judges concurred.