[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a dissolution action in which the principal dispute is over the physical residence of Ashley Brooke Cunningham born July 30, 1988 as the lawful issue of the marriage.
The parents have agreed on joint legal custody Conn. Gen. Stat. 46b-56a. This two-year-old is the only child born to the wife (hereafter Jeanne) since February 13, 1987 when the parties were married at Wilmington, Delaware.
One of the parties has been a continuous resident of this state for at least twelve months before the filing of the complaint. The wife, whose maiden name was Jeanne Audie, has filed across complaint. The paternal grandmother was allowed to intervene to seek joint custody with her son and/or CT Page 4158 reasonable visitation. Motion 103.
The marriage has broken down irretrievably. Jeanne was raised in Florida but at age ten moved to Delaware to live with her older sister. The parties met in Delaware. They moved to Connecticut where the husband (hereafter Berris) had been raised and Berris continued promoting evening shows in the greater Connecticut area. The parties lived at several locations including the home of the paternal grandmother. The parents cannot agree as to which, if either, was the primary caretaker during this period when both were generally home during the day.
Concurrent with the 1989 death of Jeanne's father in Florida, she decided to end the marriage. Among her concerns were irregular income and residential shifts. Toward the end of 1989, Jeanne took Ashley to Florida. Berris reciprocated by removing the child to Connecticut. Upon his return, he filed this action including an ex parte petition for temporary custody. The request was granted on January 11, 1990. The resulting hearing on the ex parte petition has been converted by agreement into this hearing on the dissolution itself. Jeanne continues to reside in Florida.
 I.
When Jeanne was about fifteen, she revealed to her sister in Delaware that there had been abuse by their father. Jeanne then began counselling. Although the therapy was not completed, she had improved her ability to respond to her situation. As an adult, she confronted her father about his behavior. The Delaware psychologist report was made available to the current evaluators.
Jeanne and the baby were evaluated in February, 1990 by Dr. Richard B. Sadler, a psychiatrist who is board certified in child psychiatry. He was aware of the abuse history. His report and testimony concluded that Jeanne demonstrated no psychiatric impairment that would interfere with her adequate parenting and that the mother/child interaction was happy, healthy and without stress. Dr. Sadler did not rank the other members of the household, nor was he currently troubled by racial problems which might arise for Ashley with a white mother and a black father.
Because Dr. Sadler had been retained by Jeanne, the parties agreed on a second evaluation. Dr. David M. Mantell a psychologist, conducted a one day clinic in March of parents and child. Dr. Mantell was aware of the abuse history. Although the mother consistently has denied abuse by a sibling, probably something did occur at least thirteen years ago in her CT Page 4159 childhood but the nature and extent were never clarified. Dr. Mantell noted that her past sexual history would not reflect on her ability to parent. The psychologist also concluded that her testing did not suggest a clinical diagnosis.
Despite these two reports Berris insists that his wife has significant emotional problems which would impact on her ability to parent. While Jeanne describes Berris as a fine father, he denigrated her parenting ability. Dr. Mantell noted that Berris might be using custody as a path to reconciliation with his wife; such an approach, of course, can be self defeating.
Like Dr. Sandler, Dr. Mantell does not believe that the racial issue is significant at this time although the situation might require special sensitivity by the parents (and paternal grandmother who is also mixed race) in the future. Jeanne is of Italian and Venezuelan background. Ashley's birth certificate may list her as black to provide minority rights.
Jeanne herself denies any racial antagonism by her Florida family toward Berris and indicates Berris could enjoy visitation in Florida. Divorce issues, apart form race, can also cause inner family conflict.
Dr. Mantell concludes that primary residence should be with the mother. He recommended that the child should not now be away from the primary residence for longer periods than two weeks. The dilemma is his further recommendation that the non residential parent should see Ashley on a regular basis, even though the child would be in Florida. Dr. Mantell suggests future review by a child psychologist to determine patterns of separation or visitation.
Berris thereafter retained a psychiatrist of his choice to evaluate the situation. As part of the evaluation, Ashley was examined in June 1990 by a clinical psychologist who found her to be a normal child. After a series of appointments with the father, grandmother and child and an interview with Jeanne, the psychiatrist who is not board certified in child psychiatry concluded that primary residence with the father would assure Ashley's development. The psychiatrist was more concerned about the abuse and race factors that the first two evaluators. The court is not persuaded by Berris' expert witness. In re Angela 11 Conn. App. 497, 499 (1987).
Berris also is rightly concerned about Jeanne's credibility. But he had his own memory lapse in describing his employment status to Dr. Mantell. Berris, moreover, concedes he has not filed his 1986-1988 tax returns, although 1987 was CT Page 4160 prepared and signed. He did not rebut Jeanne claim he prepared phantom income tax returns to satisfy financial applications.
 II.
Connecticut no longer recognizes any maternal preference or tender years doctrine. The standard for decision is the best interest of the child. Hurtado v. Hurtado, 14 Conn. App. 296,301-302 (1988); Seymour v. Seymour, 180 Conn. 705 (1980).
 a.
Berris has been attempting to promote concerts and to establish a night club. In 1989, he grossed about $27,000. In 1990, he worked for several weeks as a dock manager for a produce company, promoted an unsuccessful concert, and now faces a ban on his recently opened night club. Not an impressive employment record. Berris is dependent on his grandmother but there is no indication of the possible extent of the support. He now draws $200 per week from business loans in connection with the club. That income with a $170 net sets $41 per week as Child Guideline support. Berris' earning capacity in today's economy was not explored, but there may be a limit on his pursuit of his promoter/entertainment goals if he does indeed have an alternative ability to support his child. Paddock v. Paddock, 22 Conn. App. 367 (1990); see Conn. Gen. Stat. 46b-180 to 46b-211. Regular employment might effect his current life style.
Jeanne now lives with her married brother in Florida. He appear to be financially successful and agreed to subsidize his sister for living and legal expenses. His house is spacious and Ashley and his comparable children are supervised by a nanny who has been in family employ for at least four years. Although Dr. Mantell expected that Jeanne be available on a full time basis for Ashley until Ashley were at least 3 1/2 years old, the mother is employed and attends school part time. The mother had hedged her expectation that Dr. Mantell's March recommendation would be accepted by the court; Jeanne is now prepared to comply with the condition. The court suggests she complete her present semester is the remaining time is relatively short in order to obtain credit; depending on the baby's schedule, the mother might be able to maintain some part time courses.
The mother has applied for nursery school for Ashley in September 1991.
Sometimes economics can force unhappy choices, but the parties should cooperate to minimize any adverse effects on CT Page 4161 infant Ashley. A shared long distance custody arrangement is not now even financially feasible. Because of the distance between Connecticut and Florida, and the cost inherent in distance, the parties are in a dilemma. The court cannot resolve the predicament by fashioning a solution beyond the dimensions of the trial. The parties might have.
 b.
The court requested that each party prepare proposed orders in the alternative. During the hearing Berris did suggest that if he had custody Jeanne could have three months summer visitation, plus other visits. Respectfully, Berris declined to submit formal proposed orders regarding visitation or finances if primary residence were set in Florida. He could see no alternative to primary residence in Connecticut. His inability to recognize any position but his own suggests a mind set which could compromise a meaningful parenting relationship. Even within his own limitation, he makes no specific proposal for Jeanne's visitation: "reasonable rights of visitation with the mother to be established by this court." Nevertheless, the court does not grade proposed orders.
Exclusive of expert fees, Berris has incurred legal fees of about $30,000 and Jeanne of about $14,400. Jeanne requests an allowance for attorneys fees and costs. There are no meaningful marital assets, both parties are not significantly employed and both have been subsidized in 1990 by family members.
The parents live at a distance and the child is in early and important stages of development. Under all the current circumstances, the present Florida arrangement provides stability for the child which is in the best interest of Ashley. O'Neill v. O'Neill, 13 Conn. App. 300, 303 (1988). Circumstances may change. Modifications are possible to reflect the status of the parties and the development levels of the child. Therefore, the court elects not to fashion long range solutions.
 III.
After considering the evidence, argument and the statutory mandates, including 46b-56, 46b-56a, 46b-6246b-81, 46b-82, and 46b-84, the court dissolves the marriage and makes the following orders:
 1. The parents shall be joint custodian of their minor child with primary residence with the mother. The parties shall consult with each CT Page 4162 other and join in major decisions to be made with regard to the child's general welfare, including education, recreation and health. The parents shall also inform each other of any illness, accident or other circumstances seriously affecting the health or welfare of the child. Each parent shall furnish the other copies of any reports from third persons concerning the health, education or welfare of the child. The parents shall exert every reasonable effort to maintain free access and unhampered contact between the child and each parent and the parents shall do nothing which may estrange the child from a parent or injure the opinion of the child as to their mother or father, or act in such a way as to hamper the free and natural development of the child's parental love and respect. In the event the parties move from present place of residence, notice shall be provided of the current address and phone number.
 2. Based on a Florida residence of the mother and child, the father shall have reasonable parenting rights, which shall include:
 a. One weekend per month, non cumulative, in Florida, excluding Mother's day weekend.
 b. One alternating holiday week pre summer, and on alternating holiday week post summer, with the post summer holiday alternating Thanksgiving and Christmas. (For 1990, the husband may have Thanksgiving.)
 c. Two two-week periods in the summer of 1991.
 d. All transportation costs shall be borne by the father. The parties shall cooperate in any clothing requirement for the child. The father shall not remove the child from the state of Florida, except as provided herein.
 e. Said parenting orders are designed for the immediate future and are subject to modification as the child develops, economics improve or residence shifts. CT Page 4163
 3. Any unreimbursed medical, dental orthodontics, optometrics, counselling and under $25 prescriptions shall be split 70% father and 30% mother. If either party can obtain health insurance for benefit of Ashley through employment, the party shall do so and 46b-84 would apply; the allocation of the cost of said insurance can be set at that time.
 4. The father shall pay child support to the amount of $41 per week in accordance with his current draw. He shall promptly notify the mother off any change in his income and any modifications shall be effective as of the date of change. The mother shall take the 1990 IRS dependency tax exemption; thereafter, the parties shall alternate. The father shall provide the wife with copies of his IRS 1040 tax return for tax years 1990-1993 promptly after filing.
 5. The husband shall pay $1 per year alimony until the child reaches the age of 5 years or July 30, 1992. Alimony can not be modified as to duration.
 6. The wife shall forthwith quit claim to the husband all right and title in 82 Preston Street, Windsor. The husband shall hold the wife harmless from any encumbrance taxes, mortgage, liens or deficiency judgments on said property.
 7. The 1985 Nissan 200SX shall be the sole property of the husband. The 1980 Nissan 200SX shall be the sole property of the wife; the car shall be in reasonable good mechanical order at time of delivery.
 8. The husband shall be solely responsible for debts listed on his financial affidavit and all taxes, interest and penalties due the Internal Revenue Service or Connecticut during the period of this marriage; he shall be further responsible for any claim arising from any business entity the wife may have been directly or indirectly involved in with the husband. The husband shall save her harmless.
The wife shall be solely responsible for CT Page 4164 debts listed on her financial affidavit, except as otherwise pe provided herein.
 9. The husband shall pay any arrearages due under pendente lite orders for Florida/Connecticut transportation.
 10. The parties shall pay equally all charges by Dr. Mantell. Otherwise the court makes no order for payment of legal or expert fees or costs.
 11. The parties shall share equally in all family photo albums and baby book. Any dispute shall be resolved by duplicate copies at shared expense.
12. The name of the wife is hereby Jeanne Audie.
SAMUEL S. GOLDSTEIN, J. CT Page 4165
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 4166
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 4167