[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR MODIFICATION (#142.00)
This case comes to this court on a motion for modification. This motion was dated January 19, 1993. The motion for CT Page 4932 modification contains in eleven pages, twenty-eight points which include facts as well as law. The substance of this motion is that the (plaintiff, hereinafter called the husband), seeks to modify downward an unallocated alimony and support order of $1,500 per month, retroactive to July of 1984 when the claim is the original motion for modification with respect to the order for payment of alimony and support was filed. For all of the reasons that are set forth hereinafter, this motion is denied.
Section 46b-86 (formerly 46-54), provides for modification of alimony or support orders. It allows motions seeking modification to be filed and granted upon a showing of "a substantial change in the circumstances of either party". The burden is on the moving party to show a substantial change in circumstances.
This court will first address the question of the substantial change in circumstances which is effectively dispositive of the issue. Thereafter, the court will briefly address the question concerning retroactivity and when it is applicable or not.
The husband claims that at the time of the dissolution on December 16, 1983 he was making $5,000.00 per month as shown on his affidavit on file as Pleading #113.00 dated November 3, 1983. The court has reviewed that financial affidavit. Note, that the financial affidavit filed at the time showed gross wages and not net wages as is the requirement and custom in dissolution of marriage proceedings. The footnote to the $5,000.00 a month showed "the plaintiff employed by GTM International, Inc., a Connecticut Corporation which has a contractual relationship with V.P. Fundamental Resources". That affidavit also showed liabilities of $74,000.00 and monthly expenses of $5,410.00.
In determining whether there has been a change in circumstances, one must look to the benchmark to determine what the circumstances were at the time of the dissolution. Certainly, it would appear that the November 3, 1983 affidavit was the benchmark at the time of the dissolution. The court, however, of its own motion, requested a copy of the 1983 tax return as this court has found over the years that many times tax returns showed different information than people show on financial affidavits. When the court reviewed Exhibit 28, the tax return for 1983, which was the year that the parties were divorced, the court was surprised to find that the total income for the husband during the year 1983 was only $15,000.00. Therefore, it is clear to this court that no true benchmark has been established as to what the man earned during the CT Page 4933 year 1983. Did he earn the $5,000.00 per month for only three months? That affidavit is supposed to be based on a thirteen week average. Accordingly, that would approximately be three months of earnings. Does that mean he earned no money the rest of the year?
If we look at his current financial affidavit of March 26, 1993, we find that he had per his 1992 Federal Income Tax Return interest and dividend income of $8,515.00. He also indicated on footnote 2 on page 2 of his financial affidavit, that he had repayment of a loan marked as "loan receivable" on September 30, 1992 of $39,815.00. Therefore, he had as a minimum $48,330.00 coming into his hands. The analysis done by the wife's attorney showed for 1992 approximately the same amount.
Note in 1991 he was repaid $37,000 of that loan receivable as shown on his March 26, 1993 affidavit. For income in 1991 on his 1040 tax return he showed on exhibit 10 $8,364 so that the cash flow for that year would have been the $37,000 plus the $8,364.00. This totals $45,364 which is gross receipts, not necessarily gross income. Note, it was never explained to this court's satisfaction when the loan receivable came into existence.
The court further notes that his current financial affidavit shows total debts of $91,000 approximately as compared to his debt of $74,000 on his November 3, 1983 affidavit. His current monthly expenses are approximately $4,000. His November 3, 1983 expenses were $5,410.00.
The court notes that when the parties' marriage was dissolved on December 16, 1983 the stipulation was that the husband would pay as unallocated alimony and child support, the sum of $750 per child per month ($1,500 per month in total) until each child reached the age of 18 years. Note that it was interesting that at the time the order was entered it was to be paid even if the wife remarried. Obviously the parties bargained for the tax consequences of this.
In addition he was to pay education expenses of the children attending the German school in Costa Rica including tuition, books, and all necessary expenses required by the school for the children's education. In addition he agreed to maintain life insurance in the amount of $500,000 for the benefit of the minor children. This was all made an order of the court. In addition he agreed to maintain medical and dental insurance for the children in the United States. CT Page 4934
The income tax return (Exhibit 11) of the husband showed that in 1990 he showed as total income $9,713. An analysis of the exhibits D, E, F, and G showed that he had, in 1990, total credits to his bank accounts of $46,003.40. On his 1989 tax return which was Exhibit 12, he showed total income of $9,720 but he ran through his various bank accounts, $53,657.95. The court also notes that he filed a personal, financial statement dated September 10, 1991 with Union Trust shown as Exhibit C where he stated that he acknowledged the accuracy of the statement and showed that he had, on page 2 under the income statement, $60,000 of total income which was marked as being per his tax return. This information does not conform to either the 1990 nor the 1991 income tax information as shown on the return.
This court finds the husband's testimony, concerning his income is at best, very inaccurate, if not untruthful. Accordingly he has not sustained by a fair preponderance of the evidence that his circumstances have substantially changed to allow a modification under 46b-86. In fact, he appears to this court to be in better financial condition now then he did on his 1983 tax return.
Although the question of retroactivity is moot based on this court's determination that the moving party has not established his burden of proof, the court feels compelled to address the issue of retroactivity. It is clear in Connecticut from our decided cases, that until recently, it was determined that 46b-86 did not authorize any retroactive modification. Darak vs. Darak 210 Conn. 462,556 A.2d 145 (1989): Paddock vs. Paddock 22 Conn. App. 367,577 A.2d 1087, (1990). Raymond v. Raymond, 6 Conn. Law Reptr. 1, 15, 16, (March 9, 1992).
By the passage of public act 91-88 which was effective on October 1, 1990, 46b-86 was amended to allow retroactive modification. Since it is a statute in derogation of the common law it must be strictly construed. It provides very specifically that no motion for modification shall be subject to retroactive modification except that the court may order modification for a motion that was pending provided it had been served pursuant to52-50. This means a motion filed as motions are filed in family relations cases does not comply with the requirements of this statute. So that the standard motion practice as seen in this judicial district is insufficient to preserve retroactive modification. 52-50 of the statutes provides substantially that CT Page 4935 process should be directed to a sheriff or other authorized person to be actually served.
Further, the moving party would have us make a quantum leap and find that he filed a motion in 1984 that would be entitled to this retroactive modification. The motion is not part of the court file and there is no indication that it was served pursuant to 52-50. Based on this court's experience of motion practice at that time, it most likely was not served pursuant to 52-50. In any event, the burden is on the moving party to establish that and it has not been so proven. Thus, it would not be retroactive.
The next part of the claim of the moving party as to retroactive modification requires, at best a creative reading of the proceedings that took place in August of 1985 before the Hon. Stanley Novack. On August 27, 1985 a hearing was held on Mr. Peter's motion. At that time the court did not vacate or modify the judgment of alimony but rather ordered him after he was found to be in arrears on his alimony and support obligation, to make payments on the arrearage at $500 per month. Arrearage was found at that time of $21,156.38. The court specifically said in the August 27, 1985 hearing, "When a judgment is entered in a family matter the parties are bound to obey the judgment until there is further action by the court. . .so you are under an obligation to pay $1,500 a month until that was changed for any reason". (Transcript at 2-3 August 27, 1985).
"The fact that you are not found in contempt doesn't relieve Mr. Peter of the obligation to pay the $21,156.38." (Transcript at 4 8/27/85).
The moving party also claims that the hearing of August 27, 1985 is still pending. The court finds that claim to be without merit. It is very clear from a review of the transcript that at least on three occasions during the proceedings Judge Novack talked about further hearings. He said, "at the December hearing, if you want to renew your motion for modification the court will consider it". He said ". . .if you're going to file a motion to modify or not" he said ". .and you want to ask for a modification, the court will hear you". It is abundantly clear to this court that this proceeding was not continued but rather terminated and left to the moving party to proceed further if he so desired.
The moving party has also addressed laches but has failed to sustain his burden of proof on the laches issue. It is clear to CT Page 4936 this court that he thinks that the mere passage of time is sufficient to the defense of laches. This court found in Raymond v. Raymond, 1992 W.L. 32576 (February 10, 1992), that where there was a change in position in good faith reliance upon the defendant's non-action, and that the moving party would suffer serious prejudice from enforcing past arrearages, the laches argument was found to be applicable. In that case, this court found that the plaintiff has clearly changed his position in reliance on the conversation he had with his wife and her inaction over the years prejudiced him.
For all of the foregoing, the motion to modify is denied.
KARAZIN, J.