[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULINGS AND ORDERS ON PLAINTIFF'S MOTIONS TO MODIFY (NO. 169 ANDNO. 177); PLAINTIFF'S MOTION FOR CONTEMPT (NO. 182); DEFENDANT'SMOTIONS TO MODIFY (NO. 175), FOR CONTEMPT (NO. 181) AND FORCOUNSEL FEES (NO. 173)
I
The procedural background of this case follows.
The parties' marriage was dissolved after an uncontested hearing on August 27, 1993. By the terms of the original decree, the parties were granted joint legal custody of their two minor children, primary residence with the defendant mother, and reasonable rights of visitation to the plaintiff father, who was ordered to pay $135 per week per child as child support, for a total of $270 per week.
Precipitated by the mother's voluntary admission in late 1994 to a hospital for inpatient treatment for a substance abuse problem, the plaintiff brought an application for modification of the original custody order, which gave rise to a stipulation CT Page 11437 (stipulation) dated January 6, 1995, entered into before the court by the parties and the attorney for the children, M (almost 10) and B (almost 4). The stipulation was approved by the court and orders were entered pursuant thereto.
The post-judgment motions filed by the parties seek to modify the custodial and child support orders and seek contempt findings for violations of the stipulated orders together with counsel fees.
At the hearing, the parties and children were represented by counsel. Both parties testified, and submitted financial affidavits and written proposed orders. Child support and arrearage guidelines worksheets were also submitted. The defendant's treatment social worker, Bennink, her Alcoholics Anonymous (AA) sponsor, the Family Services Officer, Linda Yuhas, and a Mr. Koss also testified and counsel made oral argument.
I find the following facts.
The salient provisions of the stipulation essentially required that the maternal grandmother have only supervised contact with the children, and, that the defendant mother remain active in AA, submit to random drug and alcohol testing and continue to participate in outpatient treatment for substance abuse.
Paragraph 7 states, "Should the defendant begin drinking or using drugs or incur any substance abuse, the plaintiff shall immediately be awarded the primary physical custody of the children until further order of the court."
 II A. Motions to Modify Custody
(1) The plaintiff claims that the defendant failed to comply with paragraph 7 by drinking (alcoholic beverages) and abusing prescriptive drugs, and therefore, he is entitled to physical custody of the children. He further asserts that defendant's failure to continue in treatment, submit to drug testing and properly supervise the maternal grandmother's access to the children, constitute a substantial change in circumstances warranting, in the children's best interest, his physical custody of the minor children. He also seeks a contempt finding for the CT Page 11438 defendant mother's violation of provisions of the stipulation. The defendant's motion for modification of custody alleges a substantial change of circumstances and seeks an order that she be granted primary physical custody of the children. As the issues raised by the parties' motions to modify custody are interwoven, the court will treat them together.
The plaintiff's witness, Koss, testified that the defendant, while at a local restaurant with her mother, had one, perhaps two, alcoholic drinks. In addition, there was evidence that the defendant missed a considerable number of appointments with her substance abuse counselor over the past nine months. By failing to attend, she also failed to submit to a number of random drug and alcohol tests. There was also evidence that she was absent from her employment an inordinate amount of time during this same period, and obtained a number of prescriptions from six different doctors. He argues that this leads to the inescapable conclusion that the defendant has relapsed and is drinking alcohol and continuing her substance abuse.
On the other hand, there is evidence that the defendant regularly and frequently attended AA during this nine-month period. She had five random tests which were negative. Her substance abuse counselor, although concerned about the missed appointments, detected no evidence of substance abuse. Her AA sponsor believed that the defendant was not drinking. The defendant's dentist prescribed a large number of her medications on account of her root canal, temporomandibular joint syndrome and other dental problems. I find the testimony of these witnesses credible. The defendant herself denies drinking and ascribes her absences from work and her missed counseling sessions to problems from illness. There was also a four-week interval during which her substance abuse counselor was on vacation, and he was not available.
While the totality of circumstances does give the plaintiff concern about whether the defendant has resumed drinking, in the light of her past history of addiction, which concern the court shares, I find that he has not met his burden of proof by the preponderance of the evidence, that the defendant has resumed `drinking or using drugs or incur any substance abuse' which would trigger a turnover of physical custody of the minor children to him pursuant to paragraph 7 of the stipulation.
(2) Even if the plaintiff had met this burden, that would not CT Page 11439 end this court's inquiry, in light of the father's August, 1995, relocation to Florida with his fiance' and her two children. This, in and of itself, constitutes a substantial change in circumstances, which requires the court to make a custodial determination guided by the best interest of the children. Section 46b-56(b). The "best interest" standard allows for a flexible, individual adjudication. Faria v. Faria, 38 Conn. Sup. 37,40 (1982). Although the term is not clearly defined, it is evident that the standard requires the court to determine which parent will better foster the children's growth, development and well being.
Among the criteria a court considers in searching for the best interests of the children are the following: each parent's relationship with the children; each parent's past behavior as it relates to their parenting ability; whether each parent successfully completed the parenting education program, §46b-69b; the recommendations of the Family Service Officer and the attorney for the children; the preferences of the children themselves; the stability and continuity of the children's environment and relationships, including their familiarity with their present neighborhood, schools, activities and friendships; the parents' consistency in parenting and life style, insofar as these factors may affect the emotional and physical growth and development of the children and their well being; the time each parent would be able to devote to the children on a day-to-day basis; the flexibility of each parent to best serve the psychological development and growth of the children, and, the instability of either parent by reason of mental condition, substance abuse, or emotional problems to adequately parent the children.
From the evidence, I find that both parents care for and love their children dearly. Each has the capacity and ability to contribute greatly to the welfare of their children. The mother has been their primary care giver throughout. The father has rarely provided day-to-day care for the younger child. He has demonstrated insensitivity to the children's emotional needs. He left a well-paying job of nine years duration, with benefits, to move to Florida with his fiance' and her children. He did this, he says, at her request, and at the same time, to take advantage of a business opportunity as a motorcycle mechanic.
By relocating, I conclude that he subordinated the interests of his children to his own needs and the desires of his fiance'. CT Page 11440
This conclusion is buttressed by these additional facts. M feels devastated by this move, and B is very strongly attached to the mother. Additionally, M has a poor relationship with father's fiance'. The father also failed to continue in effect his employment-related health insurance for the children and to provide mother with his Florida address and telephone number, although he did provide a telephone number to M.
The children are intelligent and are functioning well under all of the circumstances. M does well academically in school and attends regularly. However, M is tense and unhappy. This is probably due to his inability to spend more time alone with his father. The father, when spending time with M, wishes to include his fiance' and her family. The father has not used all of his access time with the children, and on occasion, has returned them early. M does not wish to move to Florida and wishes to remain with his mother. Both children have great bonds with mother, and she has a more nurturing relationship with them than father.
The Family Services Officer, Yuhas, recommends that joint custody of the minor children with primary residence with mother continue, in light of the nurturing relationship and strong bonding they have with their mother. She also believed that the children would experience significant additional disruption to their lives by moving to Florida. The father's move has already disrupted them, principally M. I find Yuhas' testimony to be credible in this regard, and I agree that her recommendation is in the children's best interests. The attorney for the children substantially adopts Yuhas' recommendations.
Accordingly, after due consideration of all of the criteria already mentioned, I find that the best interest of the children, under all of the circumstances of this case, would be better served by them remaining with mother as their primary physical custodian, with substantial access and parenting time with father.
 III A. Plaintiff's Motion for Contempt
The plaintiff's claim of contempt is based on the defendant's failure to comply with paragraphs 5, 6 and 7 of the stipulated orders. I find that she has violated paragraph 5 by allowing CT Page 11441 unsupervised contact by the maternal grandmother with the children on several occasions. She has not violated paragraph 7, and she has failed, in part, to comply with the requirements of paragraph 6, in that she has missed, without proper justification or excuse, a number of her substance abuse counseling sessions. She is therefore adjudged to be in contempt.
B. Defendant's Motion for Contempt
The defendant asserts that the plaintiff failed to pay child support in accord with the order requiring him to pay $270 per week. I find this claim proven, and an arrearage is due the defendant from the plaintiff in the amount of $1,125 as of September 29, 1995, as agreed by the parties. The plaintiff has not prevailed on his defense of inability to pay, and accordingly, I find him in contempt.
 IV Plaintiff's Motion for Modification of Child Support
The plaintiff earned $55,090 in salary during 1993 and $57,281 in 1994 from his Northeast Utilities job as a mechanic, with full benefits as a union member, including health and life insurance, pension plan and a 401K plan. At the time he left this employment, his financial affidavit disclosed gross earnings of $856 per week and a net of $690 per week.[1] In Florida, he is employed as a motorcycle mechanic where he earns $320 per week gross. He reports $255 per week net. However, he has overstated his deductions, and his actual net is $269 per week.
He voluntarily left his utility company job to pursue his avocation and hobby of working on motorcycles as a mechanic. He believes that his opportunity in Florida will provide him with greater job satisfaction and, that within a reasonable time, his earnings will be comparable to those from the utility company job. The plaintiff asserts that he was low man on the seniority pole, and would be the next to go in the event of layoffs, as two men junior to him were laid off in the past. He also claimed that the union and the company are in the process of contract negotiations, and that as previous contract negotiations were problematic, he anticipates the ongoing negotiations to be also. He essentially saw his job situation as a `writing on the wall'. To the contrary, I find that as he was neither threatened nor notified of an impending layoff, his uncertainty about his future CT Page 11442 does not rise to an inevitable discharge, and that he left his employment voluntarily.
It is well settled that child support awards may be based on earning capacity of a parent rather than on actual earned income. See Lucy v. Lucy, 183 Conn. 230, 234 (1981); Child Support and Arrearage Guidelines, § 46b-215a-3(b)(1)(B) (eff. June 1, 1994). This is especially appropriate when the supporting spouse has voluntarily left his employment. See cases such as Paddock v.Paddock, 22 Conn. App. 367 (1990); Hart v. Hart, 19 Conn. App. 91
(1989).
The child support and arrearage guidelines worksheet submitted at the hearing, based on the plaintiff's actual net earnings, would suggest $50.50 per child per week for a total of $101 per week as child support for the parties' two children. The child support order presently in effect is $270 per week. As the deviation is greater than 15 percent, there is a rebuttable presumption that the current order substantially deviates from the guidelines' suggested amount.
Although the plaintiff's quest for enhanced job satisfaction and a new career is commendable, I find that his earning capacity remains unaltered. It is not the decrease in his actual income which controls when there is no decrease in his earning capacity. It would be inappropriate or inequitable to apply the guidelines mechanically, in the light of his previously established and essentially unchanged earning capacity. It would also be unfair to require the mother and children to bear any part of the burden of his voluntary career change, which his own testimony reveals should result in only a temporary loss of income.
Accordingly, the plaintiff's motion for modification of the child support order is denied; however, for cash flow purposes, $70 per week of the order is suspended until April 1, 1996, which shall accrue and be paid at the rate of $30 per week (including the $20 per week arrearage payment set forth below), together with the original order of $270 per week, until all arrearages are paid in full.
In accordance with the foregoing, the following orders shall also enter.
(1) Joint legal custody of the minor child to the parents, primary residence with mother; parenting time with father as CT Page 11443 follows:
 Alternating Christmas and spring vacation periods, commencing Christmas 1995;
 With M, six weeks each summer; with B, three weeks each summer, and an additional week each year beginning 1997, to a maximum of six weeks.
All transportation to be paid for and provided by father; B to travel with a suitable adult, until age 10. Father shall advise mother of his designated summer weeks vacation time with the children in writing by certified mail, no later than May 1st of each year.
Father shall provide mother his address and telephone number, and may have access to the children at any time in Connecticut upon 48 hours notice. During all periods the children are with father, he shall have physical custody.
(2) The mother shall not use alcohol or abuse drugs, illegal or prescriptive; she shall continue with AA and substance abuse counseling, and be subject to random drug and alcohol testing, for a period of one year from date, or earlier upon discharge by her treatment provider. She shall execute an authorization to the Family Services Officer and the children's attorney to permit them to obtain her attendance records at AA and with substance abuse treatment providers and any test results.
In the event mother enters inpatient treatment, thentemporary physical custody of the children shall be transferred to father until one week after mother is discharged from inpatient treatment by the health care provider, after completion
of such treatment, when the children shall be returned to mother's home. It is the court's hope that the parties cooperate and work together by both being there for the children, in the children's best interest, instead of continuing this wasteful litigation, which as the parties should have by now realized, has already inflicted some emotional damage upon their older child.
The mother shall not permit unsupervised contact between the children and maternal grandmother.
Family Services shall review and monitor the custodial CT Page 11444 provisions herein, and the court retains jurisdiction until September 1, 1996.
(3) The father shall immediately reinstate the health insurance for the benefit of the minor children, or provide comparable coverage for them.
(4) The fees of the attorney for the children in the amount of $2,745 are found to be reasonable and reasonably necessary for their representation. Each party shall pay 50 percent thereof, subject to credits, with one year from date.
(5) The arrearage of $1,125 due mother for child support shall be paid at the rate of $20 per week, with the unsuspended portion of the current order of $200 per week by immediate wage garnishment, for a total payment of $220 per week. When this arrearage is satisfied, the payment toward the arrearage created by the suspension shall remain at $30 per week until all arrearages are satisfied. The original order of $270 per week shall be reinstated effective April 1, 1996.
(6) Counsel fees are not awarded to either party on the contempt motions, as each violated court orders. In addition, while the plaintiff did not prevail on his motion to modify, I conclude that his motion was filed and pressed in pursuit of a good faith concern over the safety and welfare of the children, and further find that his motion to modify was not frivolous.
Moreover, the defendant has earning capacity and assets, and can earn adequate sums through her employment if she more fully exploits her earning capacity. Hence, she is permitted to pay her own attorney's fees.
(7) All restraining orders are vacated; all orders contained in the original decree and the stipulation not modified by the orders herein shall remain in full force and effect.
Teller, J.