[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION FOR MODIFICATION (NOVEMBER 28, 2001) (MOTION 124) MOTION FOR ORDER (APRIL 12, 2002) (MOTION 135) AMENDED MOTION FOR MODIFICATION (APRIL 10, 2002) (MOTION 136)
The parties presented evidence concerning the defendant husband's above-referenced motions. The essence of the defendant's motions is that he accepted early retirement and, consequently, is no longer able to pay the court ordered alimony payments.
I. Statement of the Case
Examination of the court file reveals the following. On April 7, 1995, the trial court, Petroni, J., entered an order that dissolved the parties' marriage. That judgment incorporated an agreement that contained a detailed formula for alimony payments. Under paragraph 7.9 of the agreement, the alimony payments would terminate no later than December 2004. The term and duration of these payments were not modifiable.
In March 2001 the plaintiff wife filed a Motion for Modification. That matter was resolved on May 31, 2001 when, by agreement of the parties, the trial court modified the original judgment which included the following relevant provision:
 2. From and after March 22, 2001 and until December 31, 2004, the Husband shall pay to the Wife the sum of Five Hundred ($500) per week as alimony based upon the Husband's current salary of $132,760 per year.
3. From and after March 22, 2001 and until December 31, 2004, the Husband shall pay to the Wife, as additional alimony, a sum equal to thirty (30%) percent, of all compensation and earned income, earned or otherwise paid to the Husband, for his personal services as an employee or otherwise, in excess of CT Page 13224 $132,760.00 per calendar year. The Husband's income shall not include money gained from investment income, capital gains, stock options, or any other intangible income.
No other portion of the original judgment changed.[1]
On November 29, 2001, the defendant filed a Motion to Modify Alimony wherein he alleged that "the Defendant has retired from his employment." On December 20, 2001, the trial court, Hiller, J., ordered that any modification would be retroactive.
On April 10, 2002 the motion to modify was amended to include the following allegations:
(i) The defendant has retired from his employment effective January 31, 2002, and his only income are his monthly pension checks which are significantly lower than his monthly income from his employment;
(ii) The minor child is now in college and has a trust fund to pay for all his expenses, and the Plaintiff is no longer responsible for any of the child expenses which she has listed on her financial affidavit;
(iii) The Defendant's health has deteriorated.
In response to this amendment the plaintiff filed a motion for order wherein she requested that the trial court reconsider the decision to order any retroactive modification.
II. Facts of the Case
The parties in the present case last litigated financial issues in May 2001. At that time the defendant was employed by the Avaya Corporation.[2] He earned approximately $132,000, excluding bonuses, per year.
In June 2001 the Avaya Corporation offered an early retirement incentive proposal to all employees. Although the defendant had reached the requisite age for retirement, he had not worked for the company long enough to qualify for this offer. In November 2001 the corporation offered a slightly different retirement package. In this second proposal the defendant received credit for each year of service with any Avaya subsidiary. Under the revised calculation method, the defendant had CT Page 13225 worked a sufficient number of years to qualify for early retirement. He immediately accepted the Avaya offer.
The defendant acknowledged that he actively explored his early retirement options. In his opinion the corporation's finances had declined; several employees had resigned; others had been terminated; still others, including the defendant, accepted early retirement.
The defendant based his retirement decision in part upon his perception of Avaya's financial strength. He also complained of stress from the corporate downsizing, a general exhaustion from the amount of work required after the September 11, 2001 disaster in New York City[3] and a concern about his general health.[4]
Despite all of the foregoing considerations, the defendant's primary concern was his fear that the company would fire him. The defendant relied upon the fact that he had received what he considered an unsatisfactory performance evaluation. In his opinion, this appraisal might have resulted in termination.
The defendant ignores the fact that he sought the early retirement option. This pursuit began almost immediately after the May 2001 order.[5]
Although he now relies upon an allegedly negative evaluation, that evaluation was for his performance from October 2000 to March 2001, a time period that preceded the last modification order. The more relevant performance appraisal, one he received in November 2001, was complimentary, not negative.
The defendant further ignores the fact that his salary increased during a time he claims his position was in jeopardy. He received bonuses during that same time frame, a period during which he asserts that the company was not satisfied with his performance. Finally, he was the beneficiary of a company sponsored trip to Puerto Rico, an act that does not comport with his claim that the company sought to punish an allegedly poor performance record.
Finally, although he questioned the Avaya Corporation's financial condition, the defendant offered no admissible, credible evidence to support his contentions. The company still exists, although with fewer employees. There is still a regional vice president of sales, the defendant's former position.
This court rejects the defendant's suggestion that his desire to seek early retirement was based solely on economic considerations. To the contrary, the defendant was tired of the long commute. He wanted to CT Page 13226 change his style of life. As a result of early retirement, he is now receiving a pension plus social security payment.[6] He stated repeatedly that he has no intention of working. He plans to move to Key West where, according to his own testimony, he will enjoy his retirement years.[7]
The defendant also suggested that a modification is warranted in part because of the fact that he now lists considerable fewer assets but greater expenses. He claims to have sold a boat at a substantial loss.[8]
He also had an interest in several properties and timeshares, none of which operated at a profit.[9] Finally, the defendant claims that he and his current wife have lost substantial amounts of money during the renovation of their former home in Westport.[10] None of the losses are substantiated.
The defendant provided a less than honest recitation of his current expenses. Initially, he avoided any direct responses to questions concerning his finances, claiming that these inquiries should be directed to his accountant.[11] Considering the fact that he and his current wife had a "50-50 partnership", he claimed a disproportionate share of their household expenses. His plans to reduce those expenses were simple. The defendant proposed he sell or transfer his remaining assets and relocate to Florida.[12]
Next the defendant relies upon the fact that his son is the beneficiary of a significant trust fund that pays for all college related expenses. He challenges the expenditures that the plaintiff lists insofar as some relate to the care and maintenance of their child. This court finds that all of the plaintiffs expenses reasonable, corroborated and justified. Furthermore, there is no evidence that the plaintiffs expenditures for her child are related to his college education or that the child has sought reimbursement for these costs. Additionally, there is no proof that the trust administrators will provide any reimbursement even should the child so apply.
Finally, the defendant claims that his health has deteriorated. Simply stated, he has not provided any credible evidence to support this claim. To the contrary, he testified that he is in generally good health.
III. Legal Analysis
A. Motion to Modify
Connecticut General Statutes 46b-86 (a) provides in relevant part:
CT Page 13227
. . . [A]ny final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . . There shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial.
The statutory prerequisites for modification of alimony are clear. There must be a substantial change in circumstances. The defendant, the moving party, has the burden of "clearly and definitely" demonstrating that substantial change of circumstances. Richard v. Richard,23 Conn. App. 58, 61, 579 A.2d 110 (1990). "That party must demonstrate that continued operation of the original order would be unfair or improper." Harlan v. Harlan, 5 Conn. App. 355, 357, 496 A.2d 129 (1985).
Furthermore, "a party seeking modification of financial orders incident to a marital judgment must clearly and definitely establish an uncontemplated substantial change of the circumstances of either party which demonstrates that continuation of the prior order would be unfair and improper. Gleason v. Gleason, 16 Conn. App. 134. 136, 546 A.2d 966
(1988) (citations omitted). This unforeseen substantial change must have occurred after the date of the last operative order. Gleason,16 Conn. App. at 137.
The defendant in the present case has produced evidence that his income has decreased since the date of the last modification. That does not end this court's inquiry. The defendant's alleged inability to pay "does not automatically entitle a party to a decrease of an alimony order."Sanchione v. Sanchione, 173 Conn. 397, 407, 378 A.2d 522 (1977). Such inability to pay must be excusable and not brought about by the defendant's own fault. Gleason v. Gleason, 16 Conn. App. at 136-37.
The term fault includes not only extravagance, neglect and misconduct but also intentional conduct. All voluntary decisions must be scrutinized. Such analysis is especially appropriate when an obligor has taken voluntary early retirement. Paddock v. Paddock, 22 Conn. App. 367,371, 577 A.2d 1087 (1990). Early retirement when an individual is capable of earning an income does not justify an automatic modification in alimony payments. See Marshall v. Marshall, 13 Conn.L.Rep. 642 (FA 81 25044) (Apr. 6, 1995) (Sferazza, J.) (defendant, a fifty-six year old employee, accepted early retirement from Pratt Whitney rather than CT Page 13228 face the prospect of termination). Regardless of his perceptions, the defendant's early retirement was totally voluntary. His continued unemployment is as a result of changed priorities.
"It is particularly appropriate to base a financial award on earning capacity where there is evidence that the payor has voluntarily quit or avoided obtaining employment in his field." Hart v. Hart, 19 Conn. App. 91,95, 561 A.2d 151, cert. denied, 212 Conn. 813, 565 A.2d 534 (1989) (citation omitted). Merely failing to obtain employment does not completely diminish an individual's capacity to earn income from gainful employment. Failing to look for employment, or choosing to enjoy one's later years, certainly does not alter that capacity.
In the present case, the defendant's change of circumstances was neither unintended nor unanticipated. At the time of the initial dissolution, and again in May of 2001, the defendant was aware of his age, his health, his son's trust fund, his family medical history and the pressures of his chosen field of employment. He nevertheless agreed that he would pay alimony for a set period of years at a certain level. He was aware of the alimony obligation when he decided to accept an early retirement offer and again when he applied for social security benefits.
This is not a situation wherein an individual has worked until a standard retirement age, or a case wherein an individual's health mandates a drastic change in lifestyle. Nor has there been a long period between the last court order and the present request for modification. The defendant admits that he is serious about retirement. He does not intend to work again.
This court has considered the prior financial orders. They provided a clear and unequivocal requirement that the defendant pay a set amount of alimony. There was a specific time limit. This court has also weighed all other operative variables presented by the parties. They include the parties' earning capacity, the degree to which the parties' continued state of unemployment was voluntary and the lifestyle maintained by each litigant. In the present case, earning capacity, not actual earnings, is the critical factor. Lucy v. Lucy, 183 Conn. at 234. Merely failing to obtain employment does not completely diminish an individual's capacity to earn income from gainful employment. Failing to look for employment or choosing to receive reduced social security at an early age certainly does not alter that capacity. The defendant chose to reduce his income. That decision cannot be at the expense of the plaintiff.
The amount set by agreement of the parties in May 2001 is a reasonable and equitable amount of alimony in the present case. The motions to CT Page 13229 modify are therefore denied. As a result, the motion for order is also denied.
Orders shall enter on these motions as herein noted.
JULIA DICOCCO DEWEY, JUDGE