[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION de DEFENDANT'S POST JUDGMENT MOTION TO MODIFY (153)
The defendant served this motion on April 23, 2002 via an application for show cause order seeking a modification in the unallocated alimony and support order of $20,000 monthly entered on January 5, 1998 as part of the judgment dissolving the marriage of the parties. At the time the defendant was employed by Merrill Lynch as a commodities trader earning an annual base salary of 115,000 and a discretionary cash bonus of 500,000. He holds a Ph.D. degree in aeronautics from MIT earned before the dissolution. They are the parents of two minor children. The plaintiff, a college graduate, had not worked since 1989 when she stopped working to have a family and has not worked since.
Subsequent to the dissolution the defendant left Merrill Lynch to accept a position with Rapobank Nederland that paid him $400,000 as a bonus to compensate him for the options lost for leaving Merrill Lynch. His W-2 received from the bank for 2000 states gross earnings of $705,580.96 with $197,562.67 withheld for federal income tax and $50,817.82 withheld for New York State income tax (Plaintiff's Exhibit 6). In January, 2001 he was released by the bank as part of its restructure. The following month he moved to Washington State and in May of that year he moved to Troy, Ohio, where his female companion lived, and purchased a house. After the divorce he also proceeded to demolish a house valued at $2 million and reconstruct a new house which was sold for $6,600,000 on July 6, 2001 (Plaintiff's Exhibit 1) The court notes this activity of the defendant as demonstrating another substantial occupational skill of his. He returned to work for a time with Merrill Lynch as a broker in late 2001 but resigned in January of this year claiming he was "burned out". No other evidence was submitted to support his claim. His last effort to find work as a trader was two years ago when he called a contact in London, England. He testified he has not looked for a trading job since early 2002. Although he claimed he had sought help from headhunters the court finds no other evidence to support the claim. CT Page 15328-ai
The defendant is claiming that he is free to live wherever he chooses ". . . for there is nothing in the law that compels a support obligor to move to a new geographical area to maximize income". This claim overlooks the fact that the defendant moved away from the area where his exceptional skills could be exercised to an area where the best he could secure was employment as a salesman in Ohio. Taken to its logical conclusion he could relocate to a tropical island where no employment was available to him and thereby completely escape the obligation to support his children and their mother. He cites cases ". . . from around the nation . . ." supporting his claim that he has no duty to relocate to find a better paying job. In the present case his voluntary relocations minimized his income. The court finds no support in Connecticut law for his position. He cites Paddock v. Paddock, 22 Conn. App. 367, 577 A.2d 1087
(1990) quoting, at p. 371, ". . . where there is evidence that a party voluntarily quit or avoided employment in his or her field of expertise and where there is evidence of that party's previous earnings." By moving from the New York area he was putting himself outside the locale utilizing his area of expertise.
The court has reached the following conclusions of fact.
1. The defendant is highly educated.
2. He has been a successful trader earning in excess of $500,000 annually.
3. As an entrepreneur he rebuilt a house in Greenwich, Ct., netting a profit of over one million dollars.
4. He has not sought employment or pursued other gainful activity commensurate with his skills and experience for almost a year.
5. He has elected to live off his assets but a significant portion, in fact, is retained earnings and profits.
6. The court concludes that he has brought about a reduction in cash flow not solely due to outside events beyond his control.
These facts present a proper application of the earnings capacity principle as set forth in Miller v. Miller, 181 Conn. 610; 436 A.2d 279
(1980) and expanded in Lucy v. Lucy, 183 Conn. 230; 439 A.2d 302 (1981). Again in Hart v. Hart, 19 Conn. App. 91; 561 A.2d 151 (1989) the earning capacity was considered after it was demonstrated that the payer voluntarily quit or avoided obtaining employment in his field. A claim of CT Page 15328-aj inability to pay needed to support a modification must be excusable and without fault, Richard v. Richard, 23 Conn. App. 58; 579 A.2d 113
(1990). Connecticut Child Support and Arrearage Guidelines Regulations Section 46b-215a-3 (b) recognizes the need for deviation in circumstances such as exist in the present case.
In conclusion, the court finds that the defendant has failed in his proof to demonstrate that the alleged change in circumstances are not of his doing and therefore excusable. The motion is denied.
HARRIGAN, JTR CT Page 15328-ak