MAUREEN DUFFY SANCHIONE *v.* FRANK AUGUST SANCHIONE

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued April 6—decision released August 16, 1977

*Andrew Chulick,* for the appellant (plaintiff).

*Richard T. Meehan, Jr.,* with whom, on the brief, was *A. Reynolds Gordon,* for the appellee (defendant).

SPEZIALE, J. The plaintiff, Maureen Duffy Sanchione, is appealing a decision which modified an award for weekly alimony and made the reduction *retroactive* to the date of the original order.

The marriage of the parties was dissolved on April 4, 1974. The court (*Levine, I., J.*) ordered the defendant, Frank August Sanchione, to convey title of the family home to the plaintiff and to pay child support for the couple's two daughters. In addition, he was ordered to pay the plaintiff nominal

alimony of $1 a year. On December 11, 1974, the plaintiff sought to open and modify this judgment,[1] claiming significant omissions and misrepresentations by the defendant as to his financial circumstances on the date of the decree. On December 19, 1974, the court (*Mulvey, J.*) found that there had been incomplete disclosure of the defendant's financial status, ordered the defendant to pay $2500 by noontime December 26, 1974, and modified the alimony award by increasing it from $1 a year to $75

[1] The plaintiff's motion for modification claimed:

"1. That on April 4, 1974, a decree was entered dissolving the marriage of the parties and providing other relief as on file including conveyance to the plaintiff title to the premises at 415 Griffin Avenue, Bridgeport, Connecticut.

2. That since the entry of the said decree, the plaintiff first realized that the mortgage on the said premises had been increased by the defendant on or about August 31, 1973, from approximately $28,500.00 to $38,500.00 without consent or approval of the plaintiff, and contrary to express representations made to her by the defendant.

3. That on April 4, 1974, following the entry of the said decree the defendant merely quitclaimed his interest in the said premises with result that the plaintiff took the premises subject to the increased mortgage.

4. That since the entry of the said decree, mortgage payments due the holder of the said mortgage are delinquent and the holder bank, The Home Savings and Loan Association, Bridgeport, Conn., is about to initiate foreclosure proceedings against the premises.

5. That also since the entry of the said decree the plaintiff has learned that on the aforesaid date of April 4, 1974, the defendant was the record owner of real estate known as 9 Frelma Drive, Trumbull, Connecticut, purchased on October 5, 1973, for $51,500.00, and that the defendant did not set forth in his financial affidavit filed with the Court on April 4, 1974, his ownership of both the properties, i.e., 415 Griffin Avenue, Bridgeport, and 9 Frelma Drive, Trumbull, or otherwise adequately disclose his ownership of said properties to the Court.

6. That by reason of the aforesaid omissions and misrepresentations, upon which the plaintiff relied to her detriment and injury, the plaintiff did not receive fair assignment to her of the estate pursuant to Section 20 of Public Act 73-373, and further the plaintiff did not receive an order of alimony in an amount to which she is entitled pursuant to Section 21 of Public Act 73-373. . . ."

a week. This judgment was never appealed by either party. Approximately six months later, on June 30, 1975, the plaintiff sought a contempt order and wage execution claiming that the defendant was in default of the court's order of December 19, 1974, except for having paid $500 of the $2500. The defendant admitted that only $500 of the $2500 had been paid. At the same time, however, he requested a retroactive modification of the alimony order for $75 weekly, claiming that his circumstances had changed since the order, that the amount was too high and "overburdensome," and that he was unable to make the payments. After a hearing, the court (*Testo, J.*) found the defendant in contempt and ordered him to comply with the prior court order of December 19, 1974, for payment of the full $2500 as ordered by the court (*Mulvey, J.*). On the same day, the court heard the defendant's motion for modification of the weekly alimony and granted it by reducing the payments from $75 weekly to $35 weekly *retroactively* to the date of the original weekly order, with the arrearage reduced accordingly.

On appeal, the plaintiff claims that the court erred (1) in refusing to correct its finding; (2) in granting the defendant's request for modification while the defendant was still in contempt of court; (3) in modifying the alimony award when the requisite showing of a substantial change in the circumstances of either party was lacking; and (4) in reducing the alimony award and making the reduction retroactive to the date of the original weekly order.

The plaintiff assigned numerous errors relating to the court's refusal to correct its finding in accordance with the plaintiff's motion to correct. Those

which have not been briefed are deemed abandoned. *Shea* v. *State Employees' Retirement Commission*, 170 Conn. 610, 613, 368 A.2d 159; *State* v. *Bowen*, 167 Conn. 526, 533, 356 A.2d 162. The plaintiff claims that the court erred in refusing to find certain facts set forth in her draft finding which she argues were material and admitted or undisputed. Many of these facts are taken from the parties' financial affidavits. The court specifically found the affidavits to be true, and also made all exhibits part of the finding. The defendant does not dispute the accuracy of the facts set forth, but merely argues that they are already encompassed by the court's finding. Immaterial corrections will not be made, nor will facts be added which are implicit in the finding as made. See *Dick* v. *Dick,* 167 Conn. 210, 213n., 355 A.2d 110. We, however, include in the finding those facts which are supported by the financial affidavits and serve to elaborate on their somewhat complicated arithmetic. The finding is also corrected to add the fact that as of July 23, 1975, the date of the hearing on the plaintiff's motion for contempt and the defendant's motion for modification of alimony, foreclosure proceedings were about to be instituted against the plaintiff by the bank. Evidence in the plaintiff's appendix shows that this fact was admitted by the defendant at the contempt hearing. It is material and relevant to establishing the plaintiff's continued need for the alimony payments, and the plaintiff was entitled to have the court include this in its finding regarding the defendant's contempt and his request for modification because of an alleged change in circumstances. See General Statutes §§ 46-52, 46-54. "In general the same sorts of circumstances are relevant in deciding whether the decree may be modified as are relevant in mak-

ing the initial award of alimony. These have chiefly to do with the needs and financial resources of the parties." Clark, Law of Domestic Relations, § 14.9, pp. 456–57. For the same reasons, the finding is corrected to reflect the fact that the defendant had purchased his Trumbull home (not the family home) in October, 1973, for $51,500 and that he lived in this furnished home alone.

The plaintiff is also correct in her contention that the court was actually reaching a conclusion when it purportedly found as a fact that "from the information disclosed on the defendant's financial affidavit, this court was of the opinion that the prior order of alimony was excessive." A "conclusion" means a finding of fact by deduction from other facts found. Maltbie, Conn. App. Proc. § 139. " 'A deduction from other facts found, whether or not it is called a conclusion, and in whatever part of the finding it is placed, is a conclusion.' *Wambeck* v. *Lovetri,* 141 Conn. 558, 561, 107 A.2d 395." *Buckley* v. *Webb,* 143 Conn. 309, 315, 122 A.2d 220. Accordingly, for this conclusion to stand it must meet the same test as the court's other conclusions attacked by the plaintiff: It must be reasonably supported by the relevant subordinate facts found and must not violate law, logic or reason. See *Spicer* v. *Spicer,* 173 Conn. 161, 163, 377 A.2d 259; *Manchester State Bank* v. *Reale,* 172 Conn. 520, 523, 375 A.2d 1009. In view of our holding in this case, this conclusion cannot stand.

On July 23, 1975, the court (*Testo, J.*) found the defendant in contempt for nonpayment of the full $2500 lump sum alimony previously ordered by the court (*Mulvey, J.*). It then overruled the plaintiff's objection to its ruling that it was going to hear the

defendant's motion for modification of alimony even though the defendant was in contempt of court. The court proceeded to hear the request for modification, and then granted the defendant substantial relief. On appeal, the plaintiff pursues her claim that the court erred in simultaneously entertaining the plaintiff's contempt petition and the defendant's motion for modification. Practice Book § 381 (a) states in pertinent part that "[u]pon an application for a modification of an award of . . . alimony . . . filed by a person who is then in arrears under the terms of such award, the court shall, upon hearing, ascertain whether such arrearage has accrued without sufficient excuse so as to constitute a contempt of court, and, in its discretion, may determine whether any modification shall be ordered prior to the payment, in whole or in part as the court may order, of any arrearage found to exist." See also General Statutes § 51-182p. Obviously, therefore, the intended procedure is that both motions be heard concurrently, which was done in the present case. The section nowhere prohibits such modification after a finding of contempt. This accords, for example, with the fact that "[f]or the most part the contempt defense [of inability to pay] requires a proof of greater financial hardship than does a motion to modify alimony." Clark, Law of Domestic Relations, § 14.10, p. 469. Thus, a defendant might be in contempt on arrearages, yet his or her financial distress, while not sufficing to excuse the delinquency in payments, might be enough to warrant some modification.

The plaintiff's remaining claims can be summarized by two questions: In this instance, did the court have authority to order modification of the prior alimony award, and was the retroactive reduc-

tion in alimony an abuse of the court's discretion? General Statutes § 46-54 reads, in part, that "[u]nless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony . . . or alimony . . . pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party. . . ." It is undisputed that this statute authorizes a court to modify periodic alimony for the future.[2] See, e.g., *Grinold* v. *Grinold,* 172 Conn. 192, 195, 374 A.2d 172; *Viglione* v. *Viglione,* 171 Conn. 213, 215, 368 A.2d 202. The question remains, however, whether accrued, unpaid installments may be modified retroactively. Several states have statutes that either expressly limit modification to future installments or expressly authorize retroactive modification. Compare Va. Code § 20-109 (court may modify "any support and maintenance for the spouse that may thereafter accrue") with N.Y. Dom. Rel. Law § 236 ("the authority . . . [for modification] shall extend to unpaid sums or installments accrued prior to the application as well as to sums or installments to become due thereafter"). It has been stated that "[a] majority of jurisdictions, where the statute does not contain express provisions, refuse to allow modification of accrued installments." Clark, Law of Domestic Relations § 14.9, p. 454. It is perhaps more revealing of the problems courts have with this issue to say, rather, that there is a decided conflict of authority, sometimes even within the

---

[2] Alimony of a specific portion of an estate or of a specific sum of money is a final judgment which the court cannot modify even should there be a change of circumstances. *Viglione* v. *Viglione,* 171 Conn. 213, 215, 368 A.2d 202; *Harrison* v. *Union & New Haven Trust Co.,* 147 Conn. 435, 438, 162 A.2d 182.

same jurisdiction. See annot., 6 A.L.R.2d 1277–1334; 24 Am. Jur. 2d, Divorce and Separation, §§ 695–698. Our statute (§ 46-54) states that an alimony order may be "continued, set aside, altered or modified." Statutes authorizing a court to "annul" or "set aside" an alimony provision have been construed by some jurisdictions to permit retroactive modification, while other jurisdictions have not so held. See annot., 6 A.L.R.2d, loc. cit.; 24 Am. Jur. 2d, loc. cit. It is apparent that the mere use of such terms as "annul" or "set aside" may not necessarily be an accurate guide to the legislative intent, because it has happened that where these terms were construed to permit retroactive modification by cancellation of arrears, the legislature thereafter amended the statute to prohibit such relief. See annot., 6 A.L.R.2d 1277 § 7. In our statute, the wording "set aside," standing alone, could just as well refer to complete relief from future payments pursuant to the original order.

There are compelling reasons for the judicial reluctance to construe a statute as permitting retroactive modification of alimony without express legislative authorization. One reason which has been advanced by the courts is that unpaid alimony installments are in the nature of a final judgment which cannot be retroactively disturbed, and the court's right to modify the alimony decree therefore extends only to the executory portion of the order, i.e., to payments to become due in the future. See, e.g., *Bean* v. *Bean,* 86 R.I. 334, 340, 134 A.2d 146. Another, most persuasive, consideration would be to prevent hardship to alimony recipients by protecting their expectations and enabling them to rely upon the continuing alimony obligation of the

paying spouse. Clark, Law of Domestic Relations, loc. cit. Of equal concern is the fact, recently discussed by this court, that a modifiable alimony decree is not entitled to full faith and credit in another state's courts, at least not where the spouse has failed to take the "final step of reducing the alimony arrearage to a judgment for money owed." *Walzer* v. *Walzer*, 173 Conn. 62, 68, 376 A.2d 414; see annot., 157 A.L.R. 170, and cases collected therein. "If the accrued installments are not modifiable, full faith and credit must be given to them. Enforcement in a foreign state is thus faster and simpler . . . . If accrued installments are modifiable, full faith and credit need not be given." Clark, op. cit., p. 454 n.15. Yet another consideration is that trial courts asked to modify retroactively the original alimony order might well become engaged in what would essentially be appellate review of another trial court's judgment, or in "second-guessing" another trial court.[3] There is no need to elaborate on the confusion, uncertainty or even "judge-shopping" that might result. Accordingly, because of the absence of an express legislative authorization such as that evident in the New York statute, we do not construe § 46-54 as authorizing retroactive modification of alimony.

---

[3] On this point, we note that the court which heard the motion for retroactive modification stated that it felt "constrained to the point of aggravation that it has to make interpretations and conclusions of what another court did some seven months ago," and commented that the court making the original order "must have been most irate. I am trying not to be such — . . . ." Later, the court stated to the defendant's counsel who was speaking of the past due amount pursuant to the original order: "Let me stop you there. We agree that that amount is $2325, not that it was valid or anything." The court also purported to find as a fact "that the prior order of alimony was excessive."

For purposes of a new hearing on alimony modification, we emphasize again that modification is not warranted unless there has been a substantial change in the circumstances of either party, occurring subsequent to the entry of the original decree, and not contemplated by the parties at that time. *Grinold* v. *Grinold,* 172 Conn. 192, 195, 374 A.2d 172. The court in the present case merely stated that the financial affidavits were true and that there had been a "change of circumstances re the defendant's ability to pay . . . ." "Inability to pay" does not automatically entitle a party to a decrease of an alimony order. It must be excusable and not brought about by the defendant's own fault. There is no way to determine simply from the affidavits and finding what factors the court considered, whether the husband's expenses were greater than necessary, whether his inability to pay was a result of his own extravagance, neglect, misconduct or other unacceptable reason, or why so many of his financial obligations were satisfied, as evidenced by his affidavits, yet the plaintiff wife was paid absolutely nothing on her weekly alimony. See Clark, Law of Domestic Relations § 14.10. The finding is inadequate to support the court's conclusions, and these conclusions themselves do not indicate adherence to the strict statutory standard of a *substantial,* unforeseen change in circumstances.

Thus, retroactive modification was not statutorily authorized, and prospective modification was not warranted on the record before us.

There is error, the modification of the alimony order is set aside and a new hearing on the motion for modification is ordered.

In this opinion the other judges concurred.