[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR MODIFICATION (#119) ANDMOTION FOR CONTEMPT (#121).
The marriage of the parties was dissolved on June 21, 1989. The court's decree incorporated by reference a certain separation agreement entered into by the parties. Article IV paragraph 4.1 provides that, "[c]ommencing July 1, 1989, and on the first of each month thereafter, the husband shall pay to the wife during his lifetime the sum of Four Thousand Dollars ($4,000) per month until the wife's death, remarriage, or May 31, 2000, whichever event shall first occur." Article IX, paragraph 9.1 further provides that "[t]he husband shall name the wife the beneficiary of Two Hundred Fifty Thousand Dollars ($250,000) of life insurance on his life as long as he is paying alimony pursuant to paragraph 4.1 herein . . . ."
The defendant has moved to modify his alimony obligation (#119) claiming that there has been a substantial change in his own financial circumstances. The plaintiff has moved that the defendant be found in contempt (#121) for his failure to make certain alimony payments, and his failure to name the plaintiff as a beneficiary on this life insurance policy.
The court held an evidentiary hearing and, as a result thereof and from an examination of the record, finds the following facts.
At the time of the parties' divorce in 1989, the defendant was employed as the president of Johnson-Mathis Corporation. The defendant had commenced his employment there in 1985. In 1989, the defendant's total compensation from his employment was approximately $144,500, gross, and $94,800 net after taxes. There was evidence at the hearing that the defendant's total income in 1989, not limited to his employment, was $253,000. The defendant explained the differential as resulting from a bonus larger than had been anticipated, and a capital gain from a one time stock sale. The court finds this explanation generally credible.
The defendant lost his job at Johnson-Mathis in May, 1990, due to a company reorganization. He received severance pay equal to one year's base salary (($125,000). In December, 1990, the defendant became employed as president and chief executive CT Page 4558 officer of AMP-AKZO. His base annual salary there was $195,000, gross. Additionally, he received bonuses of $77,000 in 1993 and $40,000 in 1994. However, the defendant was involuntarily terminated by AMP-AKZO in April, 1994. He again received a severance package of one year's salary. When the defendant learned of his impending fate at AMP-AKZO, he made diligent efforts to find other employment. In the meantime, he subsisted on his severance monies and borrowed against a pension from Celanese Corporation, with whom he had been previously employed for some twenty-one years.
The defendant became employed again in October, 1995, as a project manager for a governmental agency, in the nature of a consulting assignment. It is a "temporary" assignment expected to last one year. The defendant s gross compensation is $140,000 annually, of which approximately $128,300 is taxable. His net after tax is $86,500 annualized.
On the expense side of the defendant's ledger, the defendant claims expenses in excess of his present net income. However, the court notes that a substantial element of that expense — his son's tuition — expires this semester. Also, the defendant has remarried, and his wife, who had income of $32,000 in 1995, contributes to household expenses. This is relevant evidence concerning the defendant's actual expenses and therefore, his ability to pay periodic alimony. Manaker v.Manaker, 11 Conn. App. 653, 655 (1987).
The court has also considered the fact that the defendant's employment requires him to maintain an overseas residence in Slovenia. One can plausibly argue that the expenses associated with maintaining that residence should be netted from his current income for purposes of determining whether a modification is appropriate. The court has considered that argument, but rejects it for several reasons. First, the defendant receives a $1,600 monthly subsidy for his living quarters. Second, many of the expenses shown as incurred as a result of the defendant being in Slovenia, would be incurred regardless of the defendant's situs there. Third, the defendant has estimated an expense of more than $20,000 annually for legal and travel expenses, which appears excessive to this court. Sanchione v. Sanchione, 173 Conn. 397,407 (1977).
The parties' agreement provided, in paragraph 4.2, that the periodic alimony was non modifiable as to term and amount, and CT Page 4559 that "[t]he husband may seek a reduction in the alimony payments only in the event his income from employment is substantially
reduced as a result of his involuntary termination of employment . . ." (Emphasis added). The burden is on the party seeking modification to show the existence of a substantial change in circumstances. Emerick v. Emerick, 28 Conn. App. 794,802 (1992). On the facts presented here, the court cannot say that the defendant's present net income is substantially reduced from what it was at the time of the dissolution. See, Heard v.Heard, 116 Conn. 632, 635 (1933). The parties have stipulated that the alimony arrearage, in the absence of modification, is $43,600 through May, 1996. The arrearage includes a period of several months when the defendant made no payments at all. The defendant's non payment has been wilful, and he is in contempt.
The matter of the defendant's failure to provide life insurance on his own life, and to name the plaintiff as beneficiary, is even more egregious. The defendant has insurance in the sum of $400,000 through his present employment. He has named his present wife as beneficiary, eliminating the plaintiff for what he conceded was "leverage" in the negotiation of alimony. This, again, is obviously wilful and the defendant is in contempt.
The court enters the following orders:
(1) The defendant's motion for modification is denied.
(2) The court finds the defendant's alimony arrearage to be in the sum of $43,600 through May 31, 1996. Further, the plaintiff's motion for contempt is granted.
(3) The defendant is ordered to make payments against the arrearage at the rate of $2,000 per month, commencing July 1, 1996.
(4) The defendant shall furnish security for payment of the arrearage, by providing the plaintiff with a valid lien in form satisfactory to the plaintiff, against his equity in his Pennsylvania residence. This lien shall continue until such time as the arrearage is fully paid. Satisfactory evidence of this lien shall be provided to the plaintiff no later than July 1, 1996.
(5) The defendant shall maintain life insurance on his life and CT Page 4560 name the plaintiff as his beneficiary, in the sum of $250,000. Satisfactory evidence of the same shall be provided to the plaintiff no later than July 1, 1996.
Dated at Stamford, Connecticut, this 6th day of June, 1996.
JOHN F. KAVANEWSKY, JR., JUDGE