[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties come to the Court on a Motion to modify Alimony, a Motion for Contempt, both filed by the Defendant and two Motions for Attorney Fees, one filed by each of the parties. The marriage of the parties was dissolved after a trial and decision by Brennan, J. on January 2, 1997. The Defendant claims the following:
 1. The order of alimony to the defendant should be upwardly modified because there has been a substantial change of circumstances in the estate of the plaintiff. CT Page 12682
 2. The plaintiff should be held in contempt because he withheld $70,000 of his 1996 bonus paid in 1997 contrary to the Court's order.
 3. The plaintiff should be held in contempt because he canceled the defendant's dental insurance contrary to the Court's order.
 4. The plaintiff should pay the defendant's counsel fees in regards to these Motions.
The Plaintiff claims Attorney's fees for responding to Defendant's Motions.
The following facts are not in dispute. The plaintiff's yearly income has increased from $120,000 at the time of the judgment to $165,000 presently. Additionally, the plaintiff was awarded a bonus for 1996 in the amount of $97,623. In December 1996, he executed documents deferring $70,000 of the bonus for the purchase of stock in the company, CTG, Inc., by whom he is employed. Such deferment is irrevocable until termination of his employment with the company or plaintiff reaching age 65 which ever comes first. Lastly, the plaintiff canceled the dental insurance coverage for the defendant, who was at the time of judgment covered under his company's policy, in January 1997.
The defendant argues that since the plaintiff's income has increased $45,000 since the date of judgment, she is entitled to a larger alimony payment. This claim is due in part to the increased availability of money to the plaintiff as well as to evidence produced by the defendant that a larger alimony payment would result in a minimal impact on the plaintiff because of tax consequences. "Alimony decrees may only be modified upon proof that relevant circumstances have changed since the original decree was granted." H. Clark, Law of Domestic Relations (1968) Section 14.9, p. 456. "Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony . . . are relevant to the question of modification." Sanchione v. Sanchione, 173 Conn. 397, 401,378 A.2d 522 (1977). Hardisty v. Hardisty, 183 Conn. 253, 258-59, A.2d 307 (1981).
While the Court is satisfied that the mere showing of plaintiff's 27% increase of income meets the substantial change CT Page 12683 in circumstance burden, the court is not persuaded that a modification is justified in this case. Under Connecticut General Statute Section 46b-82, there are several factors that the Court can consider in setting an alimony award. The defendant offered little or no evidence concerning these factors that was not presented to Judge Brennan at the time of the original hearing. According it is this Court's belief, after careful review of Judge Brennan's decision, that while he understood the plaintiff's estate would develop at a greater rate than the defendant's. Judge Brennan accounted for that by awarding to the defendant other considerations, i.e., 50% of the bonuses. A simple increase in salary would not suffice to supplant those considerations. The defendant further argues that other factors such as plaintiff's subsequent remarriage and further improvements to his estate places him in a better position than at the original hearing and would justify an increase in the alimony payment. However, this Court believes that this argument still only goes to the factor of the estate which is only one factor of several listed by the statute. Therefore, the Defendant's claim for additional alimony is denied.
The second Motion by the Defendant concerns the 1996 bonus awarded to the Plaintiff in January 1997. The plaintiff argues that he is not responsible for paying to the defendant 50% of the deferred $70,000 because he did not receive it in hand or in the alternative, he was not aware of Judge Brennan's order in December 1996 when he signed the papers to defer that portion of his bonus. The Court is not persuaded by the plaintiff's argument that he did not receive the $70,000. Words are usually read in their general and popular sense. The Courts have defined the word "receive" as "to get by transfer." Hallenbeck v. Getz,63 Conn. 385 (1893). Clearly, the plaintiff got by transfer the total amount of the bonus. It is no longer in the control of the company and any decisions concerning the money is made by Mr. Grich as evidenced by his execution of the papers which deferred the money until possibly his 65th birthday. The fact that he did not get in his hand is an exercise in semantics that the Court is unable to accept. Similarly, the claim that he didn't know Judge Brennan's order when he made the deferment is without merit. As indicated by the evidence, the pendente lite order of the Court had required the plaintiff to hold any bonus in escrow. If it was his intention to have the money available, pending some order of the Court, the entire amount would have been placed in escrow. However, the Court believes that such was not his intent. Obviously, by deferring the amount as he did, he intended to CT Page 12684 remove it from the possible reach of the defendant since he knew a decision from Judge Brennan could occur at any moment. The fact that he executed the papers before the actual receipt of the decision carries no weight to this Court.
Further this Court is concerned that the defendant violation of Judge Brennan's order is more than 50% of the $70,000 which was deferred by the plaintiff. The plaintiff. in his testimony, indicated that, in 1997, he received a salary which started at $120,000 and increased in February of that year to $145,000. He further testified that his salary increased in February of this year to $165,000 where it remains at the present time. Upon review of the plaintiff's pay stubs (defendant's exhibit B), it shows the plaintiff received in 1997 a yearly salary equal to $148,614. Yet, when you look at the last paycheck for that year, it shows a year to date total figure of $294,530. If you subtract the salary from the year to date total figure and then subtract the $97,623 already discussed, you find that there is a balance of $48,293. The plaintiff in his testimony offered no explanation for this additional amount. Since this is money over and above the plaintiff's salary, the Court questions whether this additional amount also should be construed as a bonus to the plaintiff.
A similar review of the plaintiff's 1998 pay stubs shows the same pattern. Although Exhibit B contains pay stubs up to the week ending 9/18/98, the year to date earnings printed on the last pay stub shows a figure of $299,990. If you subtract the proportional salary, repeatedly testified to by the plaintiff as $165,000 a year, to that date, and then subtract the $39,000 claimed as bonus by the plaintiff, there is a balance of $179,374. The plaintiff again offered no explanation for the large increases in his year to date earnings. The Court again poses the question as to what this large sum represent if not a bonus to the plaintiff. This Court, after hearing two days of evidence from the parties, is not clear whether the plaintiff is fully complying with Judge Brennan's decision. It is apparent to this Court that the parties have been unable to communicate effectively in regards to the issues of their dissolution. Moreover, it is not the intention of the Court to create situations which will foster continual litigation for the parties and the courts. The major concern is to ensure that the orders as issued by Judge Brennan will be followed by the parties as they were intended now and in the future. CT Page 12685
Thus, the Court finds the plaintiff in contempt of Judge Brennan's order to give the defendant 50% of his bonus and orders him to pay to the defendant half of the $70,000 that was deferred in December, 1996. Said amount shall be paid to the defendant by December 1, 1998. Furthermore, the Court orders the plaintiff to authorize, and execute any papers necessary thereto, the direct access by the defendant to CTG, Inc. with respect to determining compensation to the plaintiff so that the defendant can be adequately informed. Such compensation shall include but not be limited to: salary, bonuses, benefits, deferred bonuses, deferred compensation and/or benefits. Such authorization shall be given to the defendant regardless of where the plaintiff is employed as long as his obligation for alimony exists.
The defendant next claims the plaintiff is in contempt of the Judge Brennan's order because when he canceled her dental insurance in January 1997 that forced her to assume dental expenses in the amount of $1,000.[1] The defendant testified that she was told in July 1997 that her insurance coverage was no longer valid and, albeit the dental work was not done until April 1998, she felt that the coverage should have been available to her at that time under the prescribed law as per Judge Brennan's order. The plaintiff testified that he did not believe the order to include dental coverage because it used the words "medical insurance".
The Appellate Court in Jenks v. Jenks, 39 Conn. App. 139,663 A.2d 1123 (1995), states "[t]o constitute contempt a party's conduct must be wilful. Connolly v. Connolly, 191 Conn. 468,482-483, 464 A.2d 837 (1983).The contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court . . . One cannot be placed in contempt for failure to read the court's mind." (Citations that there is no discussion concerning the health insurance which might help this Court to determine if the plaintiff is in contempt of court for canceling the dental coverage. Accordingly, without a clear and express direction in the decision by Judge Brennan, this Court is unwilling to make that leap.
However, given the general discussion of the parties relative positions and estates and the discussion of the defendant's health in particular, it is reasonable to infer that Judge Brennan's order intended the plaintiff to provide medical and dental insurance to the defendant as it existed at the time of the hearing. Yet, in light of the possible interpretations of CT Page 12686 Judge Brennan's order, this Court does not find the plaintiff in contempt for canceling the defendant's dental insurance. Nonetheless, even in the absence of a finding of contempt, a court has broad discretion to make a party whole. Clement v.Clement, 34 Conn. App. 641, 647, 643 A.2d 874 (1994). In this case, repayment of the $1,000 would restore the defendant to a position comparable to where she would have been if the insurance had been in place under her COBRA rights in April 1998. Therefore, the plaintiff shall pay to the defendant the sum of $1,000 on or before December 1, 1998. Additionally, if the defendant's dental insurance COBRA rights can be restored, the plaintiff shall do so immediately and pay the cost thereof until the end of the prescribed time.
Lastly, the court comes to the Motions for Attorney Fees filed by both the plaintiff and the defendant. As discussed above, this Court has made a finding of contempt in regards to the plaintiff. Hence, the Court awards to the defendant attorney fees in the amount of Four Thousand Dollars ($4,000). Said amount shall be paid directly to the defendant's attorney by December 31, 1998. The Motion for Attorney's Fees by the plaintiff is denied.
Moore, J.