[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR MODIFICATION (DATED FEBRUARY 17, 2001)
The plaintiff has moved for modification of the alimony award entered at the time of the decree dated August 24, 1990. The parties were married on May 6, 1967. At the time of this decree, the parties entered into a stipulation in writing which provided in paragraph IV that the husband should pay $500 per week periodic alimony to the wife which shall terminate upon the husband's death, wife's death, wife's remarriage, or wife's cohabitation as defined by statute. The agreement further provided that upon the husband's retirement the court would reconsider the amount of alimony.
The husband has now retired. Based upon the parties' agreement, the court now has the jurisdiction to reconsider the question of alimony. Even without such a provision, the court may properly reconsider the issue of alimony upon a finding of a substantial change of circumstances. Section 46b-86 (a) of the Connecticut General States; see also Misinonile v. Misinonile, 35 Conn. App. 228, cert. denied231 Conn. 929 (1994).
At the time of the decree, the plaintiff was employed at Perkin Elmer Corporation. He was the Director of National Accounts and was receiving a gross pay of $100,000 per year. The defendant was also working at that time earning slightly less than $24,500 employed at Sikorsky as a material handler. Three years later the Perkin Elmer division in which the plaintiff was employed was sold to another company and his salary was reduced to $73,000 per year. Even though his gross income had been cut by 33 percent he did not seek a modification of his alimony. During this period, the divisions by whom he was employed either were sold or he changed jobs to receive a higher salary. He first received $80,000 per year and then $85,000 per year and then $90,000 per year in 1995 with the Hughes Company in Danbury and then took a job with a company in San Jose, California. That job lasted until 1998 when that company was sold and he was layed off. At that time he sent his resume to two thousand potential employers for a professional position. However, he was then 60 years of age and he was unable to find professional employment. He moved to Pennsylvania so he could live with his brother since he had no job. He worked at the Philadelphia Airport as a baggage handler during the holiday season. That job terminated, however, as soon as the holiday season was over. He also worked at Walmart to earn enough money for food and clothing. In his job search there were one or two interviews and CT Page 8614 telephone interviews. Once they learned that he was 60 years old however, they were no longer interested. There were younger men with just as much experience who could be hired at lower salaries.
The plaintiff then reached 62 years of age. The only way to meet even some of his indebtedness was to take early retirement and receive his social security and his pension from Perkin Elmer. He receives $324 a week from social security and $500 per week from his pension. After deductions for federal and state taxes, his net per week is $683.
The defendant receives social security of $184 per week and pension income of $156 per week for a total gross of $340 per week. Her deductions for state and federal taxes amount to $31.00 per week for a net weekly wage of $309.
At the time of the decree of dissolution, the plaintiff agreed to be solely responsible for the home equity loan at People's Savings Bank then in the approximate amount of $65,000. This then became an order of the court. In his motion for modification, the plaintiff requests an order vacating all financial obligations. Since this was part of the agreement between the parties, the court made no specific finding that this was not hidden alimony. Neither did the trial court characterize the obligation to pay the home equity line of credit as a nonmodifiable assignment of property. However, the plaintiff assumed this indebtedness as set forth in Article IX of the Agreement entitled "Liabilities." By the tenure of the agreement, he was solely responsible for this obligation which was a lien upon the real property conveyed to the wife by the terms of Article II of the Agreement. The agreement further provided that if the defendant wife were to sell the real property prior to the payoff of the equity line, the plaintiff husband "shall execute a promissory note to the wife for the outstanding balance at the rate of interest then being paid to the lienholder." The husband's promissory note was to be secured by the husband's retirement plan at Perkin-Elmer. As the agreement was drafted, it is clear to this court that the parties intended that the payoff of the home equity credit line was a transfer of property pursuant to the provisions of § 46b-81 of the General Statutes. The plaintiff cannot, therefore, be relieved of this obligation.
On the order of periodic alimony, there is an outstanding arrearage to Jun. 5, 2001, the date the hearing was held on this matter. The arrearage as of the date the defendant was served (February 22, 2001) was $126,316. To this must be included 14 weeks at $500 per week ($7,000) plus 5/7 of a week to Jun. 5 ($355) for a total of $133,671. The defendant sought the assistance of support services and garnished the plaintiff's social security and collected $713.40 each month which has been collected for the months of April, May and Jun. The sum of $2140.20 should, CT Page 8615 therefore, be credited leaving a total arrearage of $131,531. This, however, must be subject to debits and credits. This arrearage cannot be modified since any modification would amount to a retroactive modification and contrary to law. Sanchione v. Sanchione, 173 Conn. 397
(1977). The court can order the arrearage to be paid by any periodic fair and equitable amount over time.
Finally, the court has considered the issue of modification as required by § 46b-86 (a). The court has considered all of the factors of § 46b-82 in making its determination on this motion. Based on the figures in the defendant's financial affidavit, the weekly figure for the home equity line of credit is $122.19 which amounts to $6,354 per year or $529.50 per month. The plaintiff has liabilities not including the alimony arrearage and the home equity line of credit of $37,469. The outstanding balance on the home equity credit line is $29,281. The plaintiff also owes the defendant whatever she has paid on the home equity credit line. The plaintiff will have to pay this line of credit at least for four years and eight months. In addition, the plaintiff will have to pay the alimony arrearage. The plaintiff has no assets.
The defendant owns the home valued at $350,000 subject only to the home equity line of credit and other assets valued at $113,000. She values the home without the benefit of an appraisal at $350,000. She reports liabilities totaling $1,183 in her financial affidavit. It is clear that she is in a far better financial position than is the plaintiff. She receives social security and her pension income totaling a net of $309 per week and expenses of $250 per week. Her financial affidavit reports only $30.00 per week for food and $5.00 per week for clothing and no amount for meals out or entertainment.
The court finds that there has been a substantial change of circumstances. Even without such a finding, the parties, by their agreement, had provided that the court could revisit the amount of alimony upon the plaintiff's retirement.
Having considered all of the foregoing, the court modifies the current order of alimony to $1.00 per year. With regard to I payment of the arrearage, the court orders $100 per week to be paid on the arrearage. The plaintiff's weekly order amounts to $222 per week. His monthly expenses not including his figure for alimony is $420. Subtracting this then from his net income of $683 leaves $263 per week out of which he must pay $222.
It is anticipated that the home equity line of credit will be paid off in four years and eight months plus whatever time it takes to pay the defendant for what she has paid on this obligation. When all payments on CT Page 8616 the home equity line of credit have been made, the plaintiff is to then pay $222 per week on the arrearage.
The plaintiff testified he is still actively seeking employment. If he does find employment, whether full time or part time, he is to advise the defendant of such together with the amount of his earnings from that employment and his deductions which advice shall be made within forty-eight hours. The court's modification of alimony is not nonmodifiable and the defendant may return to court to request modification in accordance with the provisions of § 46b-36 (a) of the General Statutes.
 _____________________ EDGAR W. BASSICK, III JUDGE TRIAL REFEREE