[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Both parties appeared and were represented by counsel. All statutory stays having expired, the court has jurisdiction.
Having heard the evidence, the court finds as follows:
The defendant and the plaintiff, whose maiden name was Adair, intermarried at Boonton, New Jersey on February 14, 1984; that the plaintiff has resided continuously in Connecticut for a period of one year next preceding the date of the filing of this complaint; that there are four minor children issue of the marriage, Lauren Nicole Macaluso . . . born September 24, 1984, Christopher Leonard Macaluso born February 26, 1986, Brian Joseph Macaluso born May 20, 1988 and Amylynn Noelle Macaluso born December 25, 1989; that there were no other minor children born to the plaintiff since the date of the marriage of the parties; that the marriage has broken down irretrievably; that there is no hope of reconciliation and that no state agency is presently contributing to the care or welfare of the parties.
The plaintiff, who appears to be in good health, was born August 15, 1960. She finished three years of college when she married the defendant. She was employed as a bank teller. After the marriage she gave up her employment to stay at home. Presently, the plaintiff is employed by the Colchester Board of Education; is paid hourly only for the hours she works and averages about $279.00 per week. She does not receive any other benefits from her employment. Her continued employment seems secure.
The defendant, who was born March 10, 1955, received a B.S. degree in Biology in 1980 from William Patterson University. In 1990, he was employed by Damon Laboratories in the field of Sales and Marketing. In 1992, he became employed by National Health Laboratories and contacted physicians to use his employer's lab services. In October 1993, he was recruited by Omni Laboratories as Regional Sales Manager at a potential annual income of $100,000.00. However, within three months he was laid CT Page 11612 off as Omni Laboratories was purchased by National Health Laboratories, the defendant's former employer. National Health Laboratories would not rehire the defendant.
The defendant remained unemployed for six months. In June 1994, the defendant was employed by Multi Plan Manage Care Planning (Multi Plan) at a starting salary of $40,000.00. Although he did not like his employment with Multi Plan, he stayed with Multi Plan for about six years when his position was eliminated and he was laid off. At that time his salary was in the low $60,000.00. The defendant was paid through October 2000.
In August 2000 the defendant became employed by Value Relations, Inc. as a Marketing and Training Representative. This agreement was terminated by Value Relations, Inc., July 6, 2001 for sub-par performances. (See Plaintiff's Exhibit G.) The defendant was also employed by SteriCycle on a straight commission basis. He was let go because, as he testified, he could not afford to buy the necessary computer equipment to upgrade his computer. However, at the time, he was paying $1,000.00 per month for an apartment he was living in.
About 1994-95 while employed by Multi Plan, the defendant started his own business working out of his home. He claims that he had to terminate this when he left the marital home. The defendant claims he cannot find employment in his field although he has had many interviews during 2001 and 2002. (See Defendant's Exhibit 3.) Although he claims that he has a herniated disc in his neck which causes him pain and a partial loss of feeling in his right arm, it appears that said condition does not affect his ability to be employed.
The plaintiff testified that the first ten years of her marriage to the defendant were good; that they purchased a home in Hebron which they subsequently sold and then purchased their marital home at 12 Apple Lane, Colchester; that, after the defendant lost his employment with Omni Laboratories, his behavior and attitude towards the plaintiff and their children changed affecting their marriage; that, although their relationship improved after the defendant was hired by Multi Plan, evidently it was not a significant change; that the defendant continued his excessive drinking, consuming 2-1/2 liters of wine every two days; that he constantly broke wine glasses; that he became distant from his family; that he didn't communicate with her; that he wouldn't eat with her and the children; that he began to distrust the plaintiff and their children; that he became suspicious of the plaintiff, accusing her of being unfaithful; that he started taping her and her children's telephone calls; that he caused her to stop her babysitting job in order to have sex with her; that he became belligerent and physically abusive to the CT Page 11613 plaintiff
The plaintiff further testified that in July 1999 the defendant became physically abusive to her; that he would often come to bed after drinking his wine, wake her up and demand sex with her; that on one occasion he slapped and dragged her across the floor and threw her on the bed; that on one occasion when the plaintiff tried to resist his advances, he punched her in the face giving her a black eye and made her stay in her room so that the children wouldn't see it; that such conduct almost caused the defendant and their son, Chris, to come to blows; that defendant called the plaintiff a bitch. However, she did admit that the defendant would apologize the next morning for his conduct.
Plaintiff further testified that the defendant took all their bank accounts and put them in his name only; that he gave her money only for groceries; that he bought a desk with draws that locked and stored items therein to prevent plaintiff from having access to them; that when plaintiff found a key to unlock the desk, he purchased a safe; that when he would leave the home, he would disconnect the telephones so that the plaintiff would be without telephones; that on March 1, 2001 the defendant got mad when he learned plaintiff was trying to get a better job; that he kicked her in the back and demanded sex or he would kill her; that she got away from the defendant and dialed 911; that defendant pulled the phone out of the wall but the police arrived and arrested the defendant; that after the defendant was arrested, she agreed with the defendant to concoct a story for the police so as to prevent the defendant from going to jail and that she did this because he promised that he would leave the marital home.
Subsequently, when the plaintiff believed that the defendant would not leave the marital home as he promised, she sought and obtained a restraining order ordering the defendant out of the marital home. At the same time, plaintiff served divorce papers on the defendant.
The defendant left the marital home and moved to a hotel in Manchester, Connecticut for three weeks then rented an apartment in Manchester until April 2002 when he moved to New Jersey to live with his parents.
The defendant denies most of plaintiffs testimony about his drinking, physical abuse, sexual demands and taping his wife and children's conversations and his lack of interest in his children. He did admit slapping his wife after she kneed him in the groin.
The parties own a marital home at 12 Apple Lane, Colchester, CT Page 11614 Connecticut. According to two comparative market analysis, the property has a market value between $247,535.00 and $260,000.00 (Plaintiff's Exhibit C and market analysis prepared by A. Douglas Thibodeau G.P.I.), and is subject to a mortgage $160,000.00. (Plaintiff and Defendant's Financial Affidavits.)
According to the parties' financial affidavits other assets of the parties consist of household furnishings, etc., a 1997 Plymouth Voyager with no equity, a People's Bank account of $500.00 and an Allstate Insurance policy of $100,000.00. The defendant had a Liberty Bank IRA in the sum of $31,000.00 but the defendant cashed it in and testified he used the proceeds to pay family bills, the mortgage and his rent.
Based on the evidence, it is clear that the marriage of the parties has broken down irretrievably without any hope for reconciliation. I find the defendant more at fault for the breakdown of the marriage than the plaintiff
The children are living with the plaintiff in the marital home. The defendant seeks joint custody of the minor children and reasonable rights of visitation. He also seeks a reduction in his support obligation as he is presently unemployed.
On May 21, 2001 the defendant was ordered to pay alimony and child support to the plaintiff. Subsequently, said orders were modified to a combined alimony and support order and the defendant was ordered to pay a lump sum on his arrearage. The defendant has ignored the pendente lite orders concerning support and alimony. As of July 23, 2002, there is an arrearage in said orders of $14,680.00.
The defendant seeks a decrease in said orders as he is unemployed although, as stated aforesaid, he claims to have contacted many companies for employment without any success. (Supra Defendant's Exhibit 3.)
To determine the support required by minor children, the court can consider the needs of the minor children and the respective abilities of the parents to provide said support. Inability to pay does not automatically entitle a party to a decrease of a support order unless it is excusable and not the parents own fault. Sanchione v. Sanchione,173 Conn. 397, 407 (1977).
Because of the defendant's attitude in ignoring the court's orders concerning alimony and support and based on his past employment record, this court concludes that the defendant's inability to meet his obligation to his family are not excusable. CT Page 11615
Further, it is settled that a court may base financial awards on the earning capacity of a parent rather than an actual earned income. Lucyv. Lucy, 183 Conn. 230 (1981).
Accordingly, the defendant's request for a decrease in his existing support and alimony orders is denied.
The orders entered by this court as set forth below are based on defendant's potential weekly earning of $1,203.00 and takes into account the fact that he is presently receiving unemployment compensation of $406.00 weekly.
After considering Connecticut General Statutes §§ 46b-61, 46b-62,46b-81, 46b-82, 46b-84 and in light of the evidence and my findings, judgment is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown. It is ordered that:
1. The plaintiff shall have custody of the minor children subject to reasonable rights of visitation to the defendant as may be mutually agreed.
2. The defendant shall pay to the plaintiff child support of $356.00 per week as per the Child Guidelines. (Plaintiff's Exhibit B.) The support order will continue to accrue for the next three months or sooner if the defendant secures employment. However, based on his present unemployment benefits, he shall pay $200.00 per week towards said order with the balance added to his arrearage.
3. The defendant shall pay to the plaintiff alimony of $150.00 per week for eight years, her remarriage, death or cohabitation with an unrelated male pursuant to Conn. Gen. Stat. § 46b-86 b, whichever is the first to occur. Said alimony is non-modifiable to term but not to amount.
Payment shall be suspended for three months or sooner if the defendant secures employment but the order shall accrue. At said time the defendant shall appear at any scheduled court hearing for orders on the accumulated arrearages.
4. As long as the defendant has a child support or alimony obligation, he shall always keep plaintiffs counsel and/or the plaintiff advised of his current resident address, telephone number, employer's name, address and telephone number and his weekly income, and when asked by plaintiffs counsel and/or plaintiff provide plaintiffs counsel and or plaintiff authorization to secure all payroll and benefit information from his CT Page 11616 employer.
Further, while under said obligations, the parties shall exchange with each other their local, federal and state returns including all their W-2's, Form 1099's and any other source of income by April 15th of each year.
When defendant becomes employed, the support and alimony payment shall be by way of an immediate wage garnishment.
5. When defendant becomes employed he shall provide health insurance coverage as may be available through his employment and immediately provide the plaintiff with notice of the policy, the policy number, policy benefits and claims form. The provisions of Conn. Gen. Stat. § 46b-84
(e) shall apply to the parties.
6. The defendant shall pay to the plaintiff 50% of all unreimbursed expenses for medical, dental and orthodontic care to the minor children within 30 days of plaintiff providing the defendant with documentation evidencing said expenses.
7. On or before November 10, 2002 the defendant shall pay $1,650.00 to the plaintiff which is the arrearage of his share of the orthodontic expenses.
8. On or before November 1, 2002 the defendant shall discharge the $820.00 lien in the marital home which he failed to pay pursuant to a pendente lite order of the court.
9. The defendant's interest in the marital home located at 12 Apple Lane, Colchester is assigned to the plaintiff pursuant to the provisions of Conn. Gen. Stat. § 46b-81.
Upon receipt of defendant's interest, the plaintiff shall assume the mortgage on said property and hold the defendant harmless therefrom. Further, she shall assume and pay the debts listed on her financial affidavit which include over $30,000.00 incurred in loans from her family to avoid foreclosure proceedings on said property.
10. The defendant shall transfer his interest in the Plymouth Voyager to the plaintiff. She shall assume and pay the loan on said vehicle and save the defendant harmless therefrom.
11. The defendant shall retain, as per the stipulation of the parties and prior order of the court, the $31,000.00 he withdrew from his IRA CT Page 11617 account.
12. The defendant shall assume and pay all the debts listed on his financial affidavits and hold the plaintiff harmless therefrom.
13. The defendant shall maintain his All State Policy life insurance policy of $150,000.00 unencumbered until the youngest child attains 18 years of age. The plaintiff shall be named as sole beneficiary of said policy, which designation shall not be revoked until the youngest child attains 18 years of age. The defendant shall provide plaintiff with the necessary authorization for her to check whether the defendant is complying with the above.
14. The defendant shall pay $5,000.00 towards the plaintiffs attorney's fees within six months.
15. The defendant shall be entitled to remove from the marital residence the following:
a. From outside of the home: four ladders, fishing equipment.
b. From the work room: table saw, boating supplies, camping supplies.
c. From the furnace room: 35 mm camera; I set of gold clubs; copies of taxes and work related items, provided the plaintiff receives copies of all financial documents in the defendant's possession which he removed from the marital home.
d. From the living room: computer desk, safe, three tables, two sofas, love seat, tree, room divider.
e. From the family room: ship wheel, bar signs/supplies, Lionel trains, negatives of family photos and albums.
Vasington, JTR CT Page 11618