[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO MODIFY CHILD SUPPORT AND ALIMONY PENDENTE LITE (MOTION 114) AND MOTION FOR CONTEMPT (MOTION 116)
The parties presented evidence concerning the plaintiff husband's May 24, 2002, Pendente Lite Motion to Modify.[1] Therein the plaintiff alleged that "the Plaintiff/Father has relocated, and therefore incurred additional costs and living expenses, that his business is closing, that he is obtaining another job with significantly lower income, that he no longer has the business which paid certain expenses . . . and that the Defendant's income has increased."
Examination of the court file reveals the following. During the relatively brief history of this matter, there has been extensive pre-trial litigation. The first operative financial agreement is dated January 2001. Therein the plaintiff agreed to pay $575 per week for unallocated alimony and child support. The plaintiff also assumed various other incidental financial obligations including medical insurance and car lease payments. Financial affidavits filed in January 2001 indicated that the plaintiff had a net weekly wage of $1,123.26. The defendant's net weekly wage was $419.90. At the time of the hearing, the plaintiff claimed a net weekly income of $365.00.[2]
I. Statement of the Case
At the evidentiary hearing, the parties established the following:
The plaintiff, Mark Yurkiw, is a professional artist. A graduate of Hunter College in New York City, he created three-dimensional models. Throughout his marriage, he was extremely successful as a commercial artist. At the time of the entry of the initial alimony and support orders, he earned approximately $90,000 annually.
Until the spring of 2002, the plaintiff maintained a studio in New York CT Page 12680 City. From that location, he coordinated various art projects for a variety of different clients. Unfortunately, after twenty-three years of success, in 2001 his business declined. Facing a downturn in the economy along with a tripling of his rent, the plaintiff voluntarily closed his New York studio in June 2002.[3] Despite the significant decrease in revenue, the plaintiff drew a salary until that date. In anticipation of the close of the New York studio, the plaintiff sold his business equipment.[4]
Despite the fact that the plaintiff had neither income nor clients from his commercial art enterprise, he used business accounts to pay the family's disability, health and life insurance costs. Furthermore the defendant's car was leased through the corporation. After he closed the studio, the plaintiff assumed personal responsibility for these expenses. He was also personally liable for several business loans.
Since closing his New York studio, the plaintiff has been unsuccessful finding an alternative source of income. For one month he was employed in a purchase company owned and operated by a personal friend; there he received a salary that would have been $50,000 annually. He left that employment in July 2002, terminated after only one month, and is now receiving unemployment compensation. Since his termination, the plaintiff has sought employment utilizing networking with old friends, clients and contacts, and newspapers. His efforts have been sporadic.
Although the plaintiff is neither physically nor emotionally disabled, he is of the opinion that his role as a caretaker for his elderly father prevents his full time job search at the present time. That job search was also suspended when the plaintiff went to Africa for a twelve-day vacation,
Turning to the defendant, at the time of the hearing the defendant, a full time homemaker prior to the parties' separation, was seeking employment as a photography stylist. The defendant's attempts to secure a position were more sustained and energetic than those made by the plaintiff. Her difficulty was that she had not worked steadily in her field of expertise for a number of years. Additionally, the defendant has been the primary caretaker for the parties' young child.
II. Legal Analysis
Connecticut General Statutes 46b-86 (a) provides in relevant part:
. . . [A]ny final order for the periodic payment of permanent alimony or support or an order for alimony CT Page 12681 or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. There shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial.
The statutory prerequisites for modification of alimony and child support are clear.
There must be a substantial change in circumstances. The plaintiff, the moving party, has the burden of "clearly and definitely" demonstrating that substantial change of circumstances. Richard v. Richard,23 Conn. App. 58, 61, 579 A.2d 110 (1990). "That party must demonstrate that continued operation of the original order would be unfair or improper." Harlan v. Harlan, 5 Conn. App. 355, 357, 496 A.2d 129 (1985). Furthermore, "a party seeking modification of financial orders incident to a marital dissolution judgment must clearly and definitely establish an uncontemplated substantial change of the circumstances of either party which demonstrates that continuation of the prior order would be unfair and improper." Gleason v. Gleason, 16 Conn. App. 134. 136, 546 A.2d 966
(1988) (citations omitted). "Such an uncontemplated substantial change must have occurred after the date of the original order." Gleason,16 Conn. App. at 137.
The plaintiff has established that there is a substantial change in circumstances. After twenty-three years of success, he no longer has income from his art studio. The plaintiff went from a lucrative position as commercial artist to unemployment. This constitutes a change in circumstances. That is not, however, the end of the inquiry. That change must legally warrant a modification of existing financial orders. Simply stated, a claim of "inability to pay" does not automatically entitle a party to a decrease of a pendente lite financial order. It must be excusable and not brought about by the plaintiffs own fault. Sanchionev. Sanchione, 173 Conn. 397, 407, 378 A.2d 522 (1977); see also Gleasonv. Gleason, 16 Conn. App. 134, 137, 546 A.2d 966 (1988). CT Page 12682
This court has considered the January 2001 financial orders. That agreement provided a clear and unequivocal requirement that the plaintiff pay a set amount of unallocated alimony and child support. This court has also weighed all other operative variables presented by the parties. They include the parties' earning capacity, the degree to which the parties' continued state of unemployment was voluntary and the lifestyle maintained by each litigant.
In the present case, earning capacity, not actual earnings, is the critical factor. Lucy v. Lucy, 183 Conn. 230, 234 (1981). Merely failing to obtain employment does not completely diminish an individual's capacity to earn income from gainful employment. Failing to look for employment, or choosing to provide care for an elderly relative, however commendable, certainly does not alter that capacity.
"It is particularly appropriate to base a financial award on earning capacity where there is evidence that the payor has voluntarily quit or avoided obtaining employment in his field." Hart v. Hart, 19 Conn. App. 91,95, 561 A.2d 151, cert. denied, 212 Conn. 813, 565 A.2d 534 (1989) (citation omitted). Clearly, the plaintiffs continued unemployment is as a result of his changed priorities. It is appropriate, therefore, that the court considers the plaintiffs earning capacity in determining a proper financial award. Miller v. Miller, 181 Conn. 610, 612-13,436 A.2d 279 (1980). Hart v. Hart, 19 Conn. App. at 91. The plaintiff is intentionally under-employed.
Based on the plaintiffs own testimony regarding his career prior to his period of unemployment, this court finds that the plaintiff had attained a level of proficiency. He has worked successfully in a competitive field. He should obtain positions that generated commensurately significant levels of compensation. The difficulty is determining an appropriate monetary amount. Therefore this court relies upon plaintiffs own admission that he secured a position that would have generated $50,000 per year.
It is the opinion of the court that the plaintiff has an earning capacity at the present time of at least $50,000. That amount is approximately one half of the amount earned at the time of the last financial hearing. Therefore, the plaintiff is now ordered to pay unallocated alimony and child support in the amount of $287.50 per week. He is also ordered to continue to pay for existing medical, health and automobile insurance, and the lease payments for the family's Mercedes SUV. Pursuant to the agreement of the parties, these payments are retroactive to July 5, 2002. CT Page 12683
Orders shall enter on this motion as herein noted.
JULIA DICOCCO DEWEY, JUDGE