[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION FOR MODIFICATION (MOTION 126) 
The matter before this Court is the plaintiff husband's Post Judgment Motion to Modify Child Support and Custody dated August 15, 2002.[1]
Examination of the court file reveals the following.
By judgment dated March 26, 1998 a trial court dissolved the underlying marriage. At the time of that order, the plaintiff was a self-employed maintenance worker, the defendant a self-employed domestic. The plaintiff agreed to pay child support in the amount of $80.00 per week per minor child.[2]
On June 19, 1999, the plaintiff and his current wife, Marta,[3] won the New York State Lottery and shared an award that totaled approximately $9,324,286.00. On August 12, 1999, the defendant filed a motion to modify alimony and child support. As a result, on February 1, 2000[4] the parties stipulated and agreed
". . . that Husband has an annual income of approximately One Hundred Forty Thousand Dollars ($140,000.00)[5] and that Wife has an annual income of approximately Ten Thousand Dollars ($10,000.00). Based on the income, expenses and deductions of Husband and Wife, child support pursuant to the Child Support Guidelines should be Five Hundred Dollars ($500.00) per week. Effective January 1, 2006, child support shall be reduced to a total of Three Hundred and Fifty Dollars ($350.00) per week, if justified by the Child Support Guidelines then in effect.
"Husband shall purchase new bedroom furniture for Dianna Hima and Kathryn Hima . . . Husband shall also purchase one personal computer for the use of the minor children. . . .
"In any [subsequent child support] proceeding, Husband's provision of a home for his children, and the continuing benefit to them, shall be taken into consideration. CT Page 303
"Husband shall purchase a single family residence in Fairfield County . . . to be occupied by Wife and the minor children . . .
"The purchase price of the Residence shall not exceed One Hundred Forty Thousand Dollars ($140,000.00). . . .
"Wife shall execute and maintain an irrevocable will pursuant to which the parties' children . . . will receive title to the Residence upon the Wife's death. . . .
"In consideration of the foregoing undertakings by Husband, Wife foregoes, relinquishes and waives her right to receive alimony. . . ."
In accordance with the stipulated agreement, the trial court modified the plaintiff's child support obligation.
In August 2002 the plaintiff filed the instant motion wherein he alleged that "[d]ue to the diminished value of his assets, Plaintiff's income is now significantly less than $140,000. . . . This change in circumstances warrants a modification of Plaintiff's child support obligation." The plaintiff stated that he had a mere $490,000 in liquid assets. Additionally he claimed approximately $265,000 equity in his home, several motor vehicles and $12,000 in personal property. The plaintiff also has approximately $21,000 in cash at his residence. These figures would indicate that the plaintiff lost and/or spent over $2,100,000 since the date of the last modification.
The plaintiff relies heavily upon his investment income. Since winning the lottery, he had been unemployed, preferring to spend his time engaged in home and self-improvement. A selfemployed contractor during his marriage, when he won the New York lottery the plaintiff relinquished all interest in his business, transferring the same to an employee. If employed, he admittedly could earn $40,000 annually. His investments now generate only $30,000 annually.
The diminution of the plaintiff's assets stems from a variety of factors. Some of that loss, $600,000.00, can be attributed to the fact that the plaintiff speculated heavily in high-risk stocks.[6]
Most significantly, the plaintiff's spending habits from February 2000 to the date of this hearing were extraordinary. He has been generous in his gifts to several relatives.[7] He has spent over $80,000 for vacations to Hungary and Florida. The plaintiff has spent over $200,000 for home improvements.[8] He hosts an annual party for his wife that CT Page 304 costs approximately $3,000.[9]
The plaintiff's generosity does not extend to the children from his first marriage. He has complied, albeit inconsistently, with the February 2000 agreement. This court finds that he seldom purchases clothing or toys. When he does, the purchases must remain at the plaintiff's home. The plaintiff does not contribute to his daughters' activities or educational expenses. He has not established any savings accounts for these children. He now claims that he cannot afford $26,000 in annual child support payments.
The defendant cleans homes for a living, earning approximately $265 per week. She receives $50 weekly as rent from her brother, Favio Foronda. Additionally, she receives child support payments from the plaintiff.
The defendant has a relatively simple financial situation. She placed funds in one of several accounts, switching the funds often to take advantage of better banking rates. Additionally, she placed monies received from re-financing in both her savings and her checking accounts. Finally, the defendant uses her account to provide banking services for her brother Favio. She cashes his checks, pays his bills, and provides him with some cash. On occasion, she provides money for his weekly $120 child support obligation.[10]
Although the defendant's testimony was not the model of clarity, this court finds that her responses were honest. She has limited income. She regularly transferred money between accounts. She has neither hidden assets nor additional income.
Connecticut General Statutes 46b-86 (a) provides in relevant part:
. . . [A]ny final order for the periodic payment of permanent alimony or support . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. There shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial.
The statutory prerequisites for modification of alimony and child support are clear. There must be a substantial change in circumstances. CT Page 305 The plaintiff, the moving party, has the burden of "clearly and definitely" demonstrating that substantial change of circumstances.Richard v. Richard, 23 Conn. App. 58, 61, 579 A.2d 110 (1990). "That party must demonstrate that continued operation of the original order would be unfair or improper." Harlan v. Harlan, 5 Conn. App. 355, 357,496 A.2d 129 (1985).
The plaintiff has failed to establish that there is a substantial change in circumstances. His argument is based on the fact that he has lost the ability to generate sufficient investment income. However, a claim of "inability to pay' does not automatically entitle a party to a decrease of a child support order. It must be excusable and not brought about by the plaintiff's own fault. Sanchione v. Sanchione, 173 Conn. 397,407, 378 A.2d 522 (1977); see also Gleason v. Gleason, 16 Conn. App. 134,137, 546 A.2d 966 (1988).
Furthermore, "a party seeking modification of financial orders incidental to a marital dissolution judgment must clearly and definitely establish an uncontemplated substantial change of the circumstances of either party which demonstrates that continuation of the prior order would be unfair and improper. Gleason v. Gleason, 16 Conn. App. 134. 136, 546 A.2d 966 (1988) (citations omitted). Such an uncontemplated substantial change must have occurred after the date of the original order. Gleason, 16 Conn. App. at 137.
Initially, this court notes that the plaintiff should have anticipated several of the expenses he now cites for his current plight. The obvious examples include court ordered payments and tax obligations. Furthermore, he should have been aware that the stock market, like the lottery, is at times a risky investment.
Furthermore, in the present case, earning capacity, not actual earnings, is the critical factor. Lucy v. Lucy, 183 Conn. 230, 234
(1981). Although the plaintiff could by his own admission earn $40,000 annually, he chooses to remain unemployed. Merely failing to obtain employment does not completely diminish an individual's capacity to earn income from gainful employment. Failing to look for employment, or choosing to pursue a new, heretofore-unsuccessful career, certainly does not alter that capacity.
"It is particularly appropriate to base a financial award on earning capacity where there is evidence that the payor has voluntarily quit or avoided obtaining employment in his field." Hart v. Hart, 19 Conn. App. 91,95, 561 A.2d 151, cert. denied, 212 Conn. 813, 565 A.2d 534 (1989) (citation omitted). The plaintiff's continued unemployment is as a result CT Page 306 of his changed priorities. Since he had sufficient assets to survive, he intentionally stopped working. Pursuit of pleasure is not a substitute for active employment. It is appropriate, therefore, that the court consider the plaintiff's earning capacity in determining a proper child support award. Miller v. Miller, 181 Conn. 610, 612-13, 436 A.2d 279
(1980). Hart v. Hart, 19 Conn. App. at 91.
The plaintiff wants the best of both worlds, the comfort of his windfall and all the pleasures he received, but no obligation to the children of his first marriage. He wants this court to believe that his financial condition is uncontrollably worse than that which existed at the time of the last modification. Allowing the plaintiff this scenario would be unconscionable. Having considered both parties' financial evidence, it is the opinion of the court that the plaintiff consciously, extravagantly, and unnecessarily dissipated his available assets.
Finally, in determining whether that change warrants a modification of child support, this court must consider a variety of elements. The central determining factor is the last modification itself. The court has also weighed all other operative variables presented by the parties. They include the plaintiff's earning capacity, the degree to which the plaintiff's continued state of unemployment is voluntary and the lifestyle maintained by the plaintiff.
The plaintiff's purported loss of income is attributable solely to his careless spending habits and his speculative investments. Although the plaintiff is entitled to gamble on stocks as well as lottery tickets and certainly can spend his money as he chooses, this court should not require his former wife and children to subsidize those choices. He cannot seek to enjoy the benefits of those changes at the expense of his support obligation. One cannot spend $80,000 for vacations, $100,000 for a pool and $50,000 for landscaping but complain about a $26,000 child support obligation. The cash he keeps at his home is nearly enough to pay an entire yearly obligation. Although the plaintiff does have higher expenses than those that existed at the time of the last modification, most of those expenses involve court ordered child support and insurance as well as educational expenses for himself and the child of his present marriage.
One cannot provide homes for his parents, sister-in-law and mother-in-law yet complain about the cost of his children's health insurance. Because the reduction in income is the result of voluntary decisions, the plaintiff's request must be denied.
Orders shall enter on this motion as herein noted. CT Page 307
JULIA DICOCCO DEWEY, JUDGE